SUSAN T. ALEXANDER *et al.*

*v*

LAURA A. PARKER.

*Filed at Springfield, January* 18, 1893.·

1. BENEFIT SOCIETIES — *who may be beneficiaries.* A statute for the formation of associations for charitable or benevolent purposes, provided that a corporation organized thereunder may, "for the purpose of assisting the widows, orphans, *or other persons dependent upon deceased members,*" provide in its by-laws for the payment by each member of a fixed sum, to be held by the corporation until the death of a member occurs, and then to be forthwith paid to the person entitled thereto, etc. A by-law of such a society required that each applicant for membership should enter upon his application the name or names and relationship or dependence of the members of his family, or those ·dependent upon him, to whom he might desire his benefit paid, and provided that a benefit might be made payable to a member's wife, children, etc.; and lastly to any other person dependent upon him: *Held,* that the statute and by-laws contemplated that the fund might be paid to a person dependent upon a member, even though such person was not in any way related to him. The dependency required in such case is not necessarily a legal dependency.

2. SAME — *" dependent" defined.* A dependent, as the term is used in reference to these benefit societies, is one who is sustained by another. The maintenance of dependents is such support as consists in the furnishing of "food, clothing, lodging or education." Maintenance in the matter of clothing does not refer to occasional gifts of clothing, but to such a regular supply of clothing as may be reasonably necessary to make the body comfortable.

3. A lady in March, 1883, became engaged to be married to a member of a benefit society, she being about forty years of age, and receiving at that time a salary of about $500 per year as clerk or bookkeeper in the office of the collector of internal revenue. She was engaged in that office from 1878 to June 30, 1887, and her salary up to July 1, 1882, was $400 per year. From that time up to July 1, 1884, it was $500 per year, and from the latter date to June 30, 1887, was $600 per year. She had no children and lived with her mother and sister. After the last date she worked for a time in a bank at a salary of one dollar a day, awhile for a safe and lock company for three dollars a week, and awhile in a store for twenty dollars a month, receiving during this time assistance and support from her mother and sister. The member to whom she was engaged failed in business in 1885, from which time he was poor and earned but little, and during the last three years of his life he never saw his affianced wife more than twice. He paid nothing toward her board, and gave her only a few presents, but paid seventy-five dollars a year in assessment on his certificate of membership: *Held,* that the affianced was not a dependent upon the member.

4. The fact that a woman is the affianced wife of a deceased member of a benefit society does not, as a matter of law, make her dependent upon him for support, etc., within the meaning of the statute relating to such a corporation, which authorizes the payment of a sum of money to any one dependent upon him. The mere engagement to marry a woman imposes no obligation on the promisor except to carry out his contract.

5. The fact that the person named in the certificate of membership may receive occasional gifts of clothing, jewelry, money, etc., does not make such person dependent upon the member making such presents. But the dependent person need not be wholly dependent on a member, but may be dependent in part only. Trivial or casual or perhaps wholly charitable assistance will not create a relation of dependency within the meaning of the statute or by-laws.

6. Where the statute and the charter of a benefit association provide for the payment of benefit funds to persons dependent upon the members, the word "dependent" means some person or persons dependent for support in some way upon the deceased. Dependence for favor, or for affection, or for companionship, or as servants or retainers, is excluded.

7. Same — *dependence is a question of fact — "affianced wife."* The designation of the person named in the certificate of membership as the "affianced wife" for the beneficiary, is not sufficient to preclude an examination of the evidence for the purpose of determining whether, as matter of fact, the person so named was really dependent upon the deceased member or not. Whether a person is included among the dependents of a member of a benefit society is a question of fact, and each case must be decided on its own merits.

8. SAME — " *affianced wife* " — *not a* " *widow* " *or* " *relative,*" *within the statute.* Under a statute authorizing the accumulation of a mortuary fund for the benefit of widows or relatives of deceased members, an affianced wife can not be made a beneficiary. She being bound to the deceased by no other tie than that of an engagement of marriage, is not a relative within the meaning of such a statute.

9. SAME — *authority to pay benefits to persons not within the classes designated by law.* Where the statute under which a benevolent corporation is organized, and its charter adopted in pursuance of such statute, designate certain classes of persons as those for whom a benefit fund is to be accumulated, a person not belonging to either or any of such classes is not entitled to take the fund. The corporation will have no authority to create a fund for other persons than the classes specified in the law, nor can a member direct the fund to be paid to a person outside of such classes.

10. SAME — *rights of beneficiaries designated by law — against others designated by the member or society.* Neither the act of a member in naming a person who is not within the classes to be benefited, nor the act of the corporation in making the certificate which it issues payable to such person, can deprive the beneficiaries designated by the law of their right to or interest in the fund. The designation of any one not within such class as the beneficiary is void.

11. SAME — *contract with members — how evidenced.* The contract between a benefit society and its members is contained in the certificate, if one be issued, taken in connection with the constitution and by-laws of the organization and the statutes of the State under which it is formed.

APPEAL from the Appellate Court for the Third District; — heard in that court on appeal from the Circuit Court of Adams county; the Hon. WILLIAM MARSH, Judge, presiding.

This is a bill of interpleader, filed on April 8, 1889, in the Circuit Court of Adams county, by the Supreme Council of the Royal Arcanum, a corporation organized under the laws of Massachusetts, against the appellee and the appellants. It appears from the allegations of the bill and from the undisputed evidence, that Edwin H. Turner, then of the city of Quincy, in said county, became a member of Quincy Council, No. 195, Royal Arcanum, in June, 1883; that said Supreme Council issued to him, as such member, a benefit certificate for $3000, dated June 15, 1883, designating, as the beneficiary

therein, the appellee, Laura A. Parker, describing her as " Mrs. Laura M. Parker (affianced wife) " ; that said Turner died on October 2, 1888, at Larned, in the State of Kansas, being then a widower, and leaving six children, who are the appellants herein, and that, at the time of his death, he was in good standing in said order. The bill states, that the fund of $3000 is claimed on the one hand by appellee, as the beneficiary named in the certificate, and, on the other hand, by the appellants, as children and heirs of the deceased, and offers to bring the fund into court, and prays that defendants may be required to interplead and settle their claims, etc. After answers and replications filed, a decree was entered in accordance with the prayer of the bill of interpleader, and directing that the money be paid into court, and that the complainant be discharged. Thereupon, the appellee filed her bill in said cause, setting up the payment of the fund into court, and averring that, at the time of the issuing of said certificate, and at the time of said Turner's death, " she was dependent upon him for her support within the true intent and meaning of the constitution and laws of the * * * Supreme Council of the Royal Arcanum," and praying that the money be paid to her. The appellants answered the bill, denying its allegations, and claiming that the fund belongs to them as the children and next of kin of the deceased. The statutes of Massachussets under which said corporation was organized, the certificate of incorporation, and the constitution and laws of the Royal Arcanum, were made exhibits to the pleadings, and introduced in evidence. After the introduction of testimony and the hearing of the cause, the Circuit Court entered a decree, finding that the complainant, Laura A. Parker, " was dependent upon the insured * * * 'in some degree, and to a certain extent, for her maintenance within the true intent and meaning of the statutes, constitution and laws " aforesaid, from June 15, 1883, up to and subsequent to said Turner's death, and ordering that the money be paid to her. This decree has been affirmed by

the Appellate Court; and from the judgment of the latter court the present appeal is prosecuted.

The certificate issued to Edwin H. Turner on June 15, 1883, recites that it is so issued upon condition that he complies "with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund." The certificate also recites, that the Supreme Council of the Royal Arcanum "binds itself to pay out of its widows and orphans' benefit fund to Mrs. Laura M. Parker — (affianced wife) — three thousand dollars in accordance with and under the provisions of the laws governing said fund," etc.

Section 2 of chapter 115 of the General Statutes of Massachusetts, in regard to associations for charitable and other purposes, provides that "such association may be formed for any * * * charitable or benevolent purpose," etc.; section 5 provides that "the corporation may prescribe by its by-laws the manner in which * * * the purposes of its incorporation may be carried out;" section 8 provides that "a corporation organized for any purpose mentioned in section 2 may, for the purpose of assisting the widows, orphans, *or other persons dependent upon deceased members*, provide in its by-laws for the payment by each member of a fixed sum, to be held by said association until the death of a member occurs, and then to be forthwith paid to the person or persons entitled thereto," etc. In May, 1882, the legislature of Massachusetts passed another law, by section 1 of which the corporation is authorized to "make to any member thereof who is disabled by accident or sickness, or to the wife, children or other relatives of, or any person dependent upon such member, weekly or other payments as may be provided by its by-laws," etc.; and by section 2 of which section 8, as above quoted, is amended so as to read : "A corporation organized, etc., * * * may, for the purpose of assisting the widows, orphans, *or other*

*relatives of deceased members, or any persons dependent upon deceased members,* provide," etc.

The certificate of incorporation of the Supreme Council of the Royal Arcanum declares that the incorporators have associated themselves with the intention of forming a corporation, etc., "for the purpose of * * * aid to its members and their dependents, * * * assisting the widows and orphans of deceased members, establishing a fund for the relief of sick and distressed members, and one for a widows and orphans' benefit fund," etc.   Article 2 of the constitution of said Supreme Council states the object of the order to be : * * * "2d. To give all moral and material aid in its power to its members and those dependent upon them ; 3d. * * * to assist the widows and orphans of deceased members ; 4th. to establish a fund for the relief of sick and distressed members; 5th. to establish a widows and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful require‑ ments, a sum not exceeding $3000 shall be paid to his family, or those dependent on him, as he may direct."

Among the provisions of section 2 of law 3 of the order are the following :

" Sec. 2.   (1)   Each applicant shall enter upon his applica‑ tion the name or names and relationship or dependence of the members of his family, or those dependent upon him, to whom he desires his benefit paid, and the same shall be entered in the benefit certificate according to said direction.

(2) A benefit may be made payable to the following classes of persons :

*Class first.*   To a member's wife, children, grandchildren, father, mother, grandparents, brother or sister, nieces and nephews, cousin in the first degree, aunt, uncle, next of kin who would be distributees of the personal estate of such member, upon his death, intestate ; in either of which cases no

proof of dependency shall be required before the issuing of the benefit certificate.

*Class second.* To any other person who is dependent upon the member for maintenance (food, clothing, lodging or educa- · tion); in which case written evidence of the dependency, within the requirements of the laws of this order, must be furnished to the satisfaction of the supreme secretary before the benefit certificate can be issued. * * *

(6) No benefit shall be payable to a person or persons of the second class mentioned in paragraph 2 of this section, unless the dependency therein required to be shown exists at the time of the member's death ; in which case proof of such dependency at the member's death shall be furnished, in writing, to the satisfaction of the supreme regent, before payment of the benefit shall be made. If, at the time of the death of such member, the dependency herein required shall have ceased, or shall be found not to have existed, or if the designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in class first, paragraph 2 of this section, if living, in the order of precedence as therein enumerated. If no one of said class shall be living at the death of the member the benefit shall revert to the widows and orphans' benefit fund."

Messrs. CARTER, GOVERT & PAPE, for the appellants :

A corporation, which is created under a general law, derives its powers from the same, and they can not be extended beyond such as are specified in the statute. *Cork* v. *Stock, etc.,* sec. 3, and cases cited in note; *People* v. *Chicago Gas Trust Co.,* 130 Ill. 268.

This principle applies to mutual benevolent societies, and consequently they can not provide a contract that a mortuary benefit fund may be made payable to any class of persons other than such as are enumerated in the statute under which they have been organized. *Palmer* v. *Welch,* 132 Ill. 141; *American Legion of*

*Honor* v. *Perry*, 140 Mass. 580; *American Legion of Honor* v. *Smith*, 45 N. J. Eq. 466; *Lyon* v. *Rolfe*, 76 Mich. 146; *Nat. Mut. Aid Ass'n* v. *Gouser*, 43 Ohio St. 1; *Skillings* v. *Mass. Benev. Assoc.*, 146 Mass. 217 ; *Daniels* v. *Pratt*, 143 id. 216; *Elsey* v. *Odd Fellows Mut. Relief Assoc.*, 142 id. 224; *Britton* v. *Supreme Council of the Royal Arcanum*, 46 N. J. Eq. 102.

Consequently, if a member of such an association designates as his beneficiary a person who does not belong to any of the classes mentioned in the statute, and if the association issues a benefit certificate to such person, the designation is nevertheless invalid and the effect is the same as if no beneficiary had been named.    The benefit fund in such cases is payable to the persons to whom it would have gone if no attempt had been made to designate a beneficiary. *Palmer* v. *Welch*, 132 Ill. 141.

The statute of Massachusetts under which the Supreme Council of the Royal Arcanum was organized, provided that the mortuary benefit might be made payable to "widows, orphans or other relatives of deceased members, or persons dependent upon deceased members." Appellee in this case does not come within any of these classes.    An affianced wife of a member is not as such a dependent upon him.    And appellee was not otherwise dependent on the member Turner. *Palmer* v. *Welch*, 132 Ill. 141 ; *Parke* v. *Welch*, 32 Ill. App. 188; *American Legion of Honor* v. *Perry*, 140 Mass. 580.

The Supreme Council of the Royal Arcanum, in its articles of association, did not create the mortuary fund for the benefit of all the classes mentioned in the statute, but only for the benefit of "widows and orphans." It can not, therefore, be paid to any one but widows and orphans of members. *Lyon* v. *Rolfe*, 76 Mich. 146; *Britton* v. *Supreme Council of the Royal Arcanum*, 46 N. J. Eq. 102.

Mr. GEORGE W. FOGG, for the appellee:

The same rules of construction should be applied to dispositions of property created by mutual benefit societies as are

applied to bequests by wills. *Minon Mutual Benefit Assn.* v. *Montgomery*, 70 Mich. 587; 14 Am. State Rep. 519, *et notis.*

The constitutions, charters and by-laws of a benevolent association are agreements, whatever be the name they bear, and as such are binding on members and associations alike, if they contravene neither law nor public policy. *Brown* v. *Starkel*, 12 Law Rep. Ass. 430; *U. M. Ac. Assn.* v. *Miller*, 26 Ill. App. 308; Bacon on B. S., secs. 37, 170, 177, 178, 179; *Tyrrell* v. *Washburne*, 6 Allen, 466, and *Hyde* v. *Woods*, 94 U. S. 523.

In determining the powers of associations, their charters and laws are to be construed like other instruments. The object being to discover the intention of the parties; and to this end, and to carry out the purposes and objects of the organization, a liberal policy has generally obtained. Bacon on B. S., secs. 348, 91, 62, 69, 74, 78, and cases there cited; Morawetz on Corp., secs. 316 and 338, inclusive; *Folmer's Appeal*, 87 Pa. St. 133.

A policy of insurance should be liberally construed in favor of the beneficiaries named by the insured. *Stone's Admr.* v. *U. S. Cos. Co.*, 34 N. J. 375; May on Ins., sec. 175; *U. M. Ac. Assn.* v. *Frohard*, 33 App. 178; *Folmer's Appeal, supra.*

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The question to be determined is, whether the fund in the registry of the Circuit Court belongs to appellee, as the beneficiary named in the benefit certificate issued to Edwin H. Turner by the Supreme Council of the Royal Arcanum, or to appellants, as the children of said Edwin H. Turner, now deceased. Where the statute, under which a benevolent corporation is organized, and its charter adopted in pursuance of such statute, designate certain classes of persons as those for whom a benefit fund is to be accumulated, a person not belonging to either or any of such classes is not entitled to take the fund. The corporation has no authority to create a fund for

other persons than the classes specified in the law, nor can a member direct the fund to be paid to a person outside of such classes. Neither the act of a member in naming a person who is not within the classes to be benefited, nor the act of the corporation in making the certificate which it issues payable to such person, can deprive the beneficiaries designated by the law of their right to, or interest in, the fund. (*Palmer v. Welch*, 132 Ill. 141; *American Legion of Honor v. Perry*, 140 Mass. 580; *Britton v. Royal Arcanum*, 46 N. J. Eq. Rep. 102; Bacon's Ben. Soc. and Life Ins. secs. 245 and 252). Bacon, in his work on Benefit Societies and Life Insurance, at section 245, states the general rule to be, that "if, by statute or charter, the beneficiaries of members are confined to certain classes, the designation of any one not of such class is void." The contract between a benefit society and its members is contained in the certificate, if one be issued, taken in connection with the constitution and by-laws of the organization and the statute of the State, under which it is formed. (Idem sec. 236).

If appellee belongs to either of the classes of persons named in the statute and constitution and by-laws of the association, she can only belong to the class designated as " persons dependent upon deceased members." Being only an " affianced wife," or, in other words, being bound to the deceased by no other tie than that of an engagement of marriage, she was not a relative within the meaning of the statute; she does not belong to class first described in the second paragraph of section 2 of Law 3.

Nor can it be said, that appellee was legally dependent upon Turner, the deceased member to whom the certificate was issued. The fact that a woman is the affianced wife of a deceased member of a benefit society does not, as matter of law, make her dependent upon him. (*Palmer v. Welch, supra; McCarthy v. New Eng. Order of Protection*, 153 Mass. 314). In *American Legion of Honor v. Perry, supra*, the Supreme Court of Massachusetts says upon this subject: "At the time

of the decease of said Perry, a valid engagement of marriage subsisted between him and the defendant Augusta, and, by reason of this, she claims to be dependent upon him. Until they became man and wife by marriage, there was no obligation upon the said Samuel to support or provide for her. She does not come within the class of persons whom, if able, he was bound by law to support. The mere engagement to marry imposed no obligation upon him, except to carry out his contract with her. Their mutual promise to marry did not in any sense, by itself, make her dependent upon him."

Counsel for appellants contend, that the words, "affianced wife," were intended to indicate the relationship between the beneficiary and the deceased member, and that, inasmuch as, under paragraphs 1 and 6 of section 2 of Law 3, appellee's name and supposed relationship were entered in the certificate and the designation of such relationship has failed for illegality, the benefit thereby became payable to the appellants as children of the deceased. This contention would have much force, if the designation of appellee as an affianced wife should be construed to be exclusively a designation of relationship, and nothing more. But paragraph 1 of section 2 provides for the entry, upon the application and in the certificate, of the name and *dependence,* as well as the name and *relationship,* of the person to whom the applicant may desire his benefit to be paid. The statute and laws evidently contemplate, that the fund may be paid to a person who is dependent upon a member, even though such person may not be in any way related to him. The dependency required is not necessarily a legal dependency. (*McCarthy* v. *New Eng. Order of Protection, supra*). While it is not altogether clear how and to what extent the character of the dependency is required by the by-law to be entered in the certificate, yet, at the same time, it is possible that the use of the expression, "affianced wife," may have been intended to designate the nature of the beneficiary's dependence upon the member applying for the certificate. We are not inclined

to hold, that the designation of the person named in the cer-
tificate as an "affianced wife" is sufficient to preclude an exam-
ination into the evidence, for the purpose of determining
whether, as matter of fact, the person so named was really
dependent upon the deceased member or not. It has been
said "that whether or not a person is included among the
dependents of a member of a benefit society is a question of
fact, and that each case must be decided upon its own merits."
(Bacon's Ben. Soc. and Life Ins. sec. 261).

The requirements in section 2 of Law 3, that written evi-
dence of the dependency must be furnished before the certifi-
cate is issued, that the dependency must exist at the time of
the member's death, and that, if, at the time of his death, the
dependency shall have ceased, or shall be found not to have
existed, the benefit shall be payable to the persons named in
said "class first"— all indicate that proof as to the dependency
may be sought outside of the terms of the certificate itself.
In *McCarthy* v. *New Eng. Order of Protection, supra,* the
certificate, issued to one McCarthy, was payable to "Sarah J.
Judge, fiancée;" and the evidence was examined for the pur-
pose of determining the fact of said Sarah's dependence upon
McCarthy in his lifetime.

The question then arises, whether the appellee was ever in
fact dependent upon Edwin H. Turner, deceased, and, if so,
whether such dependence had ceased at the time of his death.
Where the statute and charter of an association provide for the
payment of benefit funds to persons dependent upon the mem-
bers, the word, "dependent," means "some person or persons
dependent for support in some way upon the deceased."
(*Ballou* v. *Gile,* 50 Wis. 614; Bac. on Ben. Soc. and Life Ins.
sec. 261). Dependence for favor, or for affection, or for com-
panionship, or as servants, or retainers, is excluded. A depend-
ent, as the term is used in reference to these benevolent
associations, is one who is sustained by another, or relies for
support upon the aid of another. In the present case, the

dependent is defined in class second of paragraph 2 of section 2 of Law 3 to be a person, " who is dependent upon the member for maintenance (food, clothing, lodging or education)." To " maintain," according to Webster, is " to bear the expense of; to support; to keep up; to supply with what is needed." He defines maintenance to be, "means of sustenance; supply of necessaries and conveniences." The maintenance, specified in said " class second," is such support as shall consist in the furnishing of " food, clothing, lodging or education." (Schouler on Husband and Wife, sec. 66). The legislative purpose in passing the statutes, under which the present association was organized, "was to provide a way by which men of small means might combine together to accumulate a fund for the benefit of those who should, as each dropped out by death, be dependent on him for food, raiment and shelter." (*Britton* v. *Royal Arcanum*, 46 N. J. Eq. 102). Maintenance in the matter of clothing does not refer to occasional gifts of clothing, but to such a regular supply of clothing as may be reasonably necessary to make the body comfortable. The fact, that the person named in the certificate may receive " occasional presents of clothing, jewelry, money, etc.," does not make such person dependent upon the member making such presents. (*Palmer* v. *Welch, supra*).

It was decided in *McCarthy* v. *New Eng. Order of Protection, supra,* that the dependent person need not be wholly dependent on a member, but may be dependent in part only. In that case it was held, that a woman engaged to be married, who, at her intended husband's request, leaves an employment which affords her a comfortable support for one in which her earnings are insufficient for that purpose, and receives from him a sum each week to make up the difference, is a person dependent upon him within the meaning of the statute. The *McCarthy* case goes as far in the direction of a liberal interpretation of the statute as correct rules of construction will warrant; but even in that case there was a regular contri-

bution of a definite amount at fixed periods for the support of the beneficiary, the court saying: "Trivial or casual, or perhaps wholly charitable assistance, would not create a relation of dependency within the meaning of the statute or by-laws."

Section 1 of the Act of 1882 provides that, where a member is disabled by accident or sickness, the association may make "to the wife, children or other relatives of, or any person dependent upon such member, *weekly*, or other payments as may be provided by its by-laws." It is fairly inferable from this language, that the legislature of Massachusetts intended the support of dependent persons to be made up of regular and continuous contributions, and not to consist of spasmodic liberality or charity.

Applying the definitions and principles here announced to the facts of the present case, we can reach no other conclusion than that the appellee was not dependent upon the deceased for such maintenance, as is contemplated by the statute and laws of the Supreme Council of the Royal Arcanum. This appears from the testimony of the appellee herself.

She became engaged to be married to the deceased in March, 1883, being then a widow of about 40 years of age, and receiving at that time a salary of $500 per year as a clerk or book-keeper in the office of the collector of internal revenue at Quincy. She received a commercial education, and worked in said office as a clerk from 1878 to June 30, 1887. Her salary up to July 1, 1882, was $400 per year, from that date to July 1, 1884, was $500 per year, and from the latter date to June 30, 1887, was $600 per year. She had no children, and lived with her mother and married sisters at their home in Quincy. After leaving the revenue office in 1887, she worked awhile in a bank on a salary of $1 per day, awhile for a safe and lock company for $3 a week, and awhile in a store for $20 per month, receiving during this time assistance and support from her mother and sisters and brothers-in-law.

The deceased, Edwin H. Turner, failed in business in Quincy in 1885, and in that year left Quincy and went to Kansas City, and from there to Larned in the State of Kansas, where he lived until his death on October 2, 1888. From 1885 to his death he seems to have been poor, working in a store owned by some of his children at Larned, Kansas. During the last three years of his life he never saw appellee more than twice, once on a visit to Quincy, and once in St. Louis, where she went from Quincy to meet him and spent several days with him. From the time of his failure in 1885 up to June 30, 1887, he was not earning as much as appellee.

Upon her direct examination appellee swore, that " the annual amount of clothing and money and other valuables contributed from the time of her engagement in March, 1883, up to the time of Turner's death was about $150 annually." This statement was not sustained by the facts developed upon the cross-examination. She there admitted that one-half of said amount — $75 per year — consisted of dues and assessments paid upon said benefit certificate. These dues and assessments cannot be regarded as contributions to her support as a dependent person. She does not show, that the deceased ever paid one cent towards her board or lodging. The only contributions made by him in her behalf before he left Quincy in 1885, which she is able to remember, are the following : " a dress-cloak for nice or elegant wear " presented to her in October, 1883, near her birthday ; a dress, costing $35, in the spring of 1884; subsequently a winter dress, and at one time a bonnet ; occasionally some perfume and car-tickets. The only money, which he is proven to have sent to her after he left Quincy in 1885, was the sum of $5, remitted to her in a letter written on December 21, 1886, for the purchase of a Christmas present. She did not see the deceased for two years before his death, and she is unable to specifically mention any other remittance than the one named, nor does the correspondence show any.

24—144 ILL.

Manifestly, the appellee was not dependent upon the deceased when the certificate was issued in June, 1883, nor at the time of his death in October, 1888; nor can his contributions to her between those dates be regarded otherwise than as " occasional presents."

The judgments of the Appellate and Circuit Courts are reversed, and the cause is remanded to the Circuit Court with directions to enter a decree directing the fund to be paid to the appellants.

*Judgment reversed.*