132    69
142   673

# SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF THE WORLD v. McALLISTER.

1. Husband and Wife—Marriage Contract.

Where a man and woman entered into a marriage contract in good faith, and continued to live and cohabit together as husband and wife, no formal ceremony was essential to the validity of the marriage.

2. Same—Divorce—Mutual Benefit Insurance.

Where a man and woman lived and cohabited together as husband and wife in good faith, under the mistaken belief that she was divorced from her husband, and the man obtained a certificate of insurance in a mutual benefit association whose by-laws provided that payment should be made to the wife, husband, children, dependent, mother, etc., of a member, at his death the insurance should be paid to her, rather than his mother, who, with full knowledge of the facts, had for 18 years treated them as husband and wife.

3. SAME—PUBLIC POLICY.

It is not contrary to public policy to permit mutual benefit associations to issue policies in favor of those who live and cohabit together in the honest belief that they are husband and wife, although one of them may have been married before and not legally divorced.

Appeal from Eaton; Smith, J. Submitted December 2, 1902. (Docket No. 126.) Decided December 29, 1902.

Bill of interpleader by the Supreme Tent of the Knights of the Maccabees of the World against Clara E. McAllister and Eleanor McAllister to determine the right to the proceeds of an insurance policy on the life of William R. McAllister, deceased. From a decree for defendant Clara, defendant Eleanor appeals. Affirmed.

Defendant Eleanor is the mother, and defendant Clara is the alleged widow, of William R. McAllister, deceased. October 2, 1890, complainant, a beneficiary association organized under the laws of Michigan, issued to William, then a resident of New York State, a policy of $2,000, payable to Clara E. McAllister, his wife, as beneficiary. Subsequently William and Clara removed to Findlay, Ohio, where he died January 16, 1901. Complainant files this bill of interpleader to determine which one is entitled to the insurance.

Clara and William in 1883 entered into a contract of marriage, but no ceremony was performed. The circuit judge found that this contract was entered into in good faith, and was consummated by a continuous living and cohabiting together as husband and wife, and by holding themselves out to the world as such, until his death. For 18 years these parties lived in Michigan, New York, and Ohio as husband and wife, were received in society as such, were known as such in every place where they lived, and were recognized as such by the defendant Eleanor and other members of her family. She visited them, and they visited her. The circuit judge, in his finding, said:

"It is seldom, where the life in the home for so long a time is laid bare before a court, that the record is as clean, and the loyalty to each other and the trust and confidence in each other are as great and strong, as the proofs show it to have been in this case."

The proofs sustain this finding. William was ill for some time previous to his death, and Clara did menial work to earn money to support him and to pay the insurance dues. The defense to her claim is that she had been previously married to one Baker, and that she never had been divorced. She admits her marriage to Baker in 1875 in the State of New York; that she lived with him until 1882; that they had one child; that they separated, and she came to Michigan. Defendant Eleanor insists that there is no proof of a divorce from Baker, who is still living. The evidence upon this point is that Baker delivered to a Mr. Hall, of Gowanda, N. Y., a document purporting to be a decree of divorce issued from a court in Pennsylvania, dissolving the marriage of Baker and his wife. Mr. and Mrs. Hall both testify that Mr. Hall received such a document from Baker; that they read it; that it purported to be a decree of divorce; that they then sent it to Clara, at Charlotte, Mich., where she was then living. It is proved conclusively that this document, whatever it was, was received by Clara. This was before her marriage with William. Relying upon this as a valid divorce, she and William contracted the marriage. The deposition of Baker was taken on behalf of Eleanor, and he testified that he gave her a document; that he thought it was an agreement of separation, and not a divorce; and that he was never legally divorced from her. The court held that Clara was legally entitled to the fund.

*Joseph L. Hooper* and *L. H. Sabin*, for appellant.

*Dean & Davids*, for appellee.

Grant, J. (*after stating the facts*). The marriage was valid if the parties were competent to contract it. No

formal ceremony is essential to the validity of a marriage. *Hutchins* v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164); *Peet* v. *Peet*, 52 Mich. 464 (18 N. W. 220).

Counsel for defendant Eleanor cite authorities holding that a marriage is void if either party thereto has another wife or husband living. The validity of a marriage does not depend upon the good faith of the parties entering into it. Both parties must be competent to contract. Unless both are single, their marriage is void, however innocently they may have entered into that relation. It is not necessary to cite authorities to this proposition. But this rigid rule has not been applied in insurance policies of mutual benefit associations, now so common, where the parties have acted in good faith. The policy in this case was not issued under section 7740 *et seq.* of the Compiled Laws. That was an act passed in 1893 (Act No. 119, Pub. Acts 1893), while this policy was issued in 1890. The record does not contain the articles of association under which the policy was issued. The act of 1893 expressly provides "that when the laws of any such association already provide that an affianced wife, or any other person who is dependent upon the member for maintenance, food, clothing, lodging, or education, may be made the beneficiary, payment of death benefits may be made to such beneficiaries." The briefs do not refer to the original articles of association, or cite the act under which the original association was organized. Counsel for defendant Eleanor quote a by-law of the association applicable to this case, and admitted by them to be consistent with the charter. That by-law reads as follows:

"No life benefit certificate shall be made payable to any person other than the wife, husband, children, dependent, mother, father, sister," etc., "of the member."

We will assume, therefore, that this is the by-law which controlled the rights of these parties at the time the policy was issued.

It is admitted that defendant Clara was legally married to Baker, and that he is still alive. We will not determine

whether the proofs show that she was legally divorced from him, as we deem it unnecessary to determine this question. It is clear that she believed she was, and that William also so believed. Both believed that they were competent to enter into the marriage relation. They did so, and faithfully lived by their obligation until death parted them. She was not the mistress of William, nor was this policy a "wager" policy, under *Mutual Ben. Ass'n* v. *Hoyt*, 46 Mich. 473 (9 N. W. 497). This contract was made in New York, and the decisions of that State should have great, if not a controlling, force in determining the rights of these parties. *Story* v. *Mutual Ben. Ass'n*, 95 N. Y. 474, is the parallel of this in its facts. Mary Story had in good faith occupied the position of the wife of Robert Story for 16 years. He had another wife living. The by-laws of the association in that case required the fund to be paid over to the widow; if no widow, then to the children, etc. The court said:

"It may be true that the by-law which prescribes the obligation and duty of the association on the death of a member contemplated a payment to the person who should be the lawful widow of a deceased member. But this was not a limitation of the power of the company, so as to prevent it from recognizing as the beneficiary a person who might be designated by the member as holding to him the relation of wife. Such designation made during the lifetime of the member, and assented to by the company, until changed by the mutual agreement of the member and the company, or at least until the arrangement was repudiated by one of the parties thereto, was binding."

*Supreme Lodge A. O. U. W.* v. *Hutchinson*, 6 Ind. App. 399 (33 N. E. 816), is another similar case. The law there provided that the beneficiary must be one or more members of the assured's family, some one related to him by blood, or who should be dependent upon him. He had named as beneficiary a woman who had lived with him as his wife, and who had borne him children. She had no knowledge that he had a lawful wife living. It was held that, though she was not in fact his wife, yet

she was dependent upon him, and had a moral right to look to him for support, and her claim to the fund was sustained. See, also, *Watson* v. *Mutual Life Ass'n*, 21 Fed. 698; *Overbeck* v. *Overbeck*, 155 Pa. St. 5 (25 Atl. 646); *Equitable Life Assur. Soc.* v. *Paterson*, 41 Ga. 338 (5 Am. Rep. 535); *Supplee* v. *Knights of Birmingham*, 18 Wkly. Notes Cas. 280.

Counsel for Eleanor cite *Keener* v. *Grand Lodge A. O. U. W.*, 38 Mo. App. 543. The court in that case found that for a period of about four years, with short periods of intermission, the deceased and the claimant, Katie Keener, "lived together in an unlawful, illicit, and licentious way." Even in the assignments of the certificates he did not designate her as his wife. In one he designated her as his "friend, Miss Katie Burke," and in the second as " Mrs. Katie Keener, bearing the relationship to myself of wife." In such cases there is no obligation, moral or legal, resting upon the assured to care for the woman. She is in no sense his wife, and not dependent upon him. In this case there is no taint upon either of the parties. For 18 years after assuming this relation they were faithful to each other. Though she may have failed to show a valid divorce, we think it not contrary to public policy to permit these mutual benefit associations to issue policies in favor of those occupying such a relation in the honest belief that they are husband and wife. If the assured, the beneficiary, and the association choose to recognize such contracts as valid, we think that it does not lie in the mouths of others to deny their validity,— especially in that of one who for 18 years, with full knowledge of the facts, recognized and treated the parties as husband and wife.

The decree is affirmed, with costs.

The other Justices concurred.