THE ROYAL LEAGUE *vs.* SARAH A. SHIELDS *et al.*—
(FRIEDA MARTHA CAROLINA WASSMANN, Appellant,
*vs.* AGNES J. CARDEN, Appellee.)

*Opinion filed June 20, 1911—Rehearing denied October 23, 1911.*

1. BENEFIT SOCIETIES—*a society cannot collect funds to pay to ineligible beneficiary.* A benefit society has no authority to collect a fund from its members for the benefit of persons other than the classes enumerated by the statute, and any direction of a member to pay the benefit to an ineligible person is void.

2. SAME—*parties entitled to fund under the law are not affected by member's void direction.* The act of a member of a benefit society in naming an ineligible beneficiary, or the act of the society in issuing a certificate payable to such beneficiary, cannot defeat the right of the beneficiaries designated by law, to claim the fund, as courts can control the payment of such fund in accordance with the rules of law.

3. SAME—*whether named beneficiary is a "dependent" is question of fact.* A "dependent" is defined as "one who is sustained by another or relies on another for support or favor;" but the question whether a particular person is or is not a dependent, within the meaning of the statute and the by-laws of a benefit society, is one of fact, to be determined from the particular circumstances.

4. SAME—*first certificate stands if beneficiaries in second certificate are ineligible.* A second benefit certificate is binding only in case it is effectually substituted for the first, and the first stands unless the persons named in the second are competent to take.

5. SAME—*dependence for favor or affection is excluded.* A liberal construction should be given to the contract between a benefit society and a member, and dependence founded upon a moral duty to provide for another should be recognized as well as that arising from a legal duty to furnish support, but dependence for mere favor or affection is excluded.

6. SAME—*when beneficiary cannot be said to be a "dependent."* A girl not the daughter, by nature or adoption, of a member of a benefit society and neither related to him nor ever a member of his household, is not his "dependent" within the meaning of the law concerning benefit societies, even though he persuaded her to give up her work and remain at home to care for her mother and for nearly ten years contributed regularly, as he had promised to do, the money for their support, his action being purely voluntary.

VICKERS, CARTWRIGHT and FARMER, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

HENRY RUSSELL PLATT, for appellant.

GEORGE C. FRY, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

The Royal League, a fraternal benefit association incorporated under the laws of this State, filed its bill of interpleader against Sarah A. Shields, Agnes J. Carden and Frieda M. C. Wassmann, asking that the court determine who was entitled to $4000 held by the league. The money was deposited on the order of the court with its clerk and the Royal League discharged out of the case. The master and the circuit court found in favor of Frieda Wassmann. Mrs. Carden alone appealed to the Appellate Court, where the decree of the circuit court was reversed and the cause remanded, with directions to enter a decree in her favor as entitled to all of said fund. Frieda Wassmann has brought the case here by appeal on a certificate of importance.

Michael Shields made application for membership in the Royal League on July 2, 1888, stating in his application that the benefits to which he might be entitled should be paid at his death, $1000 to Agnes Jennings and $3000 to Kittie Jennings. This application was approved and a benefit certificate issued accordingly on July 31, 1888. Kittie Jennings died in 1900. Thereafter Michael Shields surrendered the first certificate, and at his request on May 10, 1901, a second certificate was issued in lieu thereof, with Frieda Martha Carolina Wassmann as the sole beneficiary. Michael Shields died intestate May 6, 1906, having made no changes as to said second certificate in the Royal League.

His widow, Sarah A. Shields, survived him but he left no direct descendants. Agnes Jennings, subsequent to the date of the first certificate, married, and is the appellee, Agnes J. Carden. Shields first met Frieda Wassmann when she was nineteen years of age, some ten years before his death. She was a manicurist and manicured his nails where she was employed, particularly with reference to breaking him of the habit of biting his nails, and he became interested in her welfare. After she had done this work for him for several months her mother became ill and she was compelled to remain at home. He learned from her employer this fact and looked her up. He found the mother greatly worried because the daughter was away from her employment and losing earnings which were much needed. He told the mother that the daughter need not go back to work; that he wanted her to be considered as his adopted daughter and that he would be responsible for her support; that he had no children and his wife was wealthy in her own right. He gave the family $20 and continued these payments, furnishing about $50 a month for nine years, the last payment being made only three or four days before his death. The mother at the time of the first visit was suffering from a nervous breakdown, which the evidence tends to show was caused, in part, through the failure of a bank and the loss of all her money, $1800. Prior to that time she had been keeping boarders. Her daughter's wages were her chief means of support. Several months after Shields commenced helping the family Frieda returned to her former employment, but in her absence her mother grew worse, and he again told the daughter to give up her work and take care of her mother. Some years before his death he told Frieda about the benefit certificate in the Royal League, and said one niece was dead and the other (Mrs. Carden) was taken care of.

The statute under which the Royal League was organized authorized such an association to issue certificates for

the benefit of the families, "heirs, blood relations, affianced husband or affianced wife of or to persons dependent upon the member." (Hurd's Stat. 1909, p. 1329.) The charter of the organization stated that it was established to pay the benefits "to the family or those depending upon" the deceased member. Its by-laws provided that the application should state the members of his family, "relatives or those dependent upon him to whom he desires his benefit paid." A fraternal benefit association cannot collect funds for the benefit of any person unless he is in one of the classes enumerated by the statute. Any direction of a member to pay the amount to be due to an ineligible person is void. If a person outside of the specified classes is named in the certificate that fact does not defeat the right, in said fund, of the beneficiaries designated by the law. (*Alexander* v. *Parker,* 144 Ill. 355; *American Legion of Honor* v. *Perry,* 140 Mass. 580; *Palmer* v. *Welch,* 132 Ill. 141.) A second certificate binds only in case it is effectually substituted for the first, and the first stands unless the persons named in the second are competent to take. (*Order of Golden Cross* v. *Merrick,* 163 Mass. 374.) The courts can control the payment of such funds in accordance with the rules of law. *Ancient Order United Workmen* v. *Ehlman,* 246 Ill. 555.

The chief contention here is whether Frieda Wassmann was dependent upon Michael Shields. Dependence is a question of fact, and the facts in each case can alone determine whether or not the beneficiary is a dependent, as that term is used under the statute and in the contract of insurance. (*Alexander* v. *Parker, supra;* Niblack on Benefit Societies,—2d ed.—sec. 195.) This court defined "dependent," as the term is used in such contracts, in *Alexander* v. *Parker, supra,* (on page 366,) as "one who is sustained by another or relies for support upon the aid of another." A hired servant is held not to be a dependent. (*Ancient Order United Workmen* v. *Gandy,* 63 N. J. Eq. 692.) A mother has been held under certain facts not to be a de-

pendent, (*Elsey* v. *Odd Fellows,* 142 Mass. 224,) so also a brother. (*American Legion of Honor* v. *Smith,* 45 N. J. Eq. 466.) An adopted child may or may not be a dependent, and the dependency will not rest upon whether there has been a legal adoption. (*Murphy* v. *Nowak,* 223 Ill. 301.) A·person who assisted a deceased member and took care of him in his last illness was held not to be a dependent. (*Groth* v. *Central Verein,* 95 Wis. 140.) A creditor is not a dependent. (*Skillings* v. *Massachusetts Benefit Society,* 146 Mass. 217.) An illegitimate child, even though the father had been boarding with the mother and paying therefor, was held not dependent upon the father. (*Lavignue* v. *Ligue des Patriotes,* 178 Mass. 25; *Supreme Tent* v. *McAllister,* 132 Mich. 69; *James* v. *Supreme Council,* 130 Fed. Rep. 1014.) "The beneficiary must be dependent upon the member in a material degree for support or maintenance and assistance, and the obligation upon the part of the member to furnish it must, it would seem, rest upon some moral or legal or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member." (*McCarthy* v. *New England Order of Protection,* 153 Mass. 314.) The dependency required is not necessarily a legal one, but this court held in *Alexander* v. *Parker, supra,* (on page 366,) that "dependence for favor or for affection or for companionship is excluded." In that case the court was discussing whether or not an affianced wife was dependent, and held, under the facts of that case, that she was not. Since that time the law in this State has been amended so that the affianced wife, though not a dependent, may be made the beneficiary, but the rule laid down in that case still holds, that dependence "for favor or affection" is excluded. A liberal construction should be given to such a contract, and dependence founded upon a moral duty to provide for another should be recognized as well as that which arises from a legal duty. (*Carmichael* v. *Mutual Benefit Ass'n,* 51 Mich. 494.) Dependency can

not rest alone on a promise or contract,—it must be decided from the facts existing in each case. A state of dependency might exist even though no legal or moral duty rested upon the member to give aid to the dependent. (1 Bacon on Ben. Soc. and Life Ins.—3d ed.—sec. 261.) While no definition of dependency can be given that will include every case and each case must be decided according to its particular merits, the word "dependent," as that term is used with reference to these fraternal benefit associations, is in some sense, at least, used as similar to the dependence which usually obtains in the family relation. *Modern Woodmen of America* v. *Comeaux,* 79 Kan. 493.

Frieda Wassmann was not related in any way to Michael Shields. She was not his daughter by nature or adoption. She had at no time been a member of his family or his household. He could not legally have been compelled to assist in her support, nor was he morally bound to furnish her support or leave her this money. Had she been at the time of his death a member of his household a different situation might have been presented, and the case of *Wilber* v. *New England Order of Protection,* 78 N. E. Rep. (Mass.) 445, cited by appellant, might then have been in point. We are compelled to hold that the obligation resting upon Shields to furnish the means of support of Frieda Wassmann does not rest upon any ground known to the law but was purely voluntary, and that she was not dependent upon him in the sense that term is used in the statute.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE VICKERS, dissenting:

I do not agree with the majority opinion for the following reasons:

The statute under which the Royal League was organized authorized fraternal associations, such as this association was, to issue certificates for the benefit of the family

or those dependent upon the member, and section 2 of by-law 3 of the Royal League provided as follows: "Each member shall enter upon his application the name or names of the members of his family, relatives or those dependent upon him to whom he desires his benefit paid, subject to such future disposal of the benefit among them as the member may hereafter direct in accordance with the constitution and laws of the order, and the same shall be entered in the benefit certificate according to said direction." The association has no authority to collect a fund from its members for the benefit of persons other than the classes enumerated by the statute, and any direction of a member to pay the benefit due him to an ineligible person is void, even though the certificate is specifically, by its terms, payable to such person. (*Alexander* v. *Parker*, 144 Ill. 355.) The act of a member in naming a person outside of the specified classes, or the act of the association in issuing a certificate so payable to such person, cannot defeat the right of the beneficiaries designated by the law in their claim to the fund. (*Palmer* v. *Welch*, 132 Ill. 141; *American Legion of Honor* v. *Perry*, 140 Mass. 580.) The Appellate Court correctly states the question to be determined in this case as follows: "We think the crucial, decisive question for our determination is, was Frieda Wassmann, within the meaning of the law of this State and of the Royal League, dependent upon Michael Shields? If she was, the decree must be sustained; if she was not, the decree must be reversed and the money deposited by the Royal League be ordered paid to appellant." As already stated, the Appellate Court answered this question in the negative and held that Agnes J. Carden was entitled to all of said fund. This being a chancery proceeding, the facts are open to consideration by this court and we are not bound by the finding of the Appellate Court.

Webster's Dictionary defines the word "dependent" to mean, "one who depends; one who is sustained by another,

or who relies on another for support or favor." Whether a particular person is or is not a dependent, within the meaning of the statute and the by-laws of a benevolent association, is a question of fact. (*Alexander* v. *Parker, supra.*) Adjudicated cases on this subject are not very numerous and the few that I have been able to examine are not very helpful, since there are in each case facts and circumstances that are not in the record in the case at bar. Bacon, in his work on Benefit Societies and Life Insurance, (vol. 1, sec. 261,) devotes the entire section to a review of the decided cases and a discussion of "dependents," as that word is used in connection with contracts of benevolent associations. It is decided in *Grand Lodge A.O.U.W.* v. *Gandy,* 63 N. J. Eq. 692, (53 Atl. Rep. 142,) that a servant is not a dependent. There are a number of cases which hold that a woman is a dependent who in good faith lives · with a member in the belief that she is his wife although there is no legal marriage. (*Supreme Lodge A.O.U.W.* v. *Hutchinson,* 6 Ind. App. 399; 33 N. E. Rep. 816; *Supreme Tent* v. *McAllister,* 132 Mich. 69; 92 N. W. Rep. 770; *Senge* v. *Senge,* 106 Ill. App. 140; *James* v. *Supreme Council R. A.* 130 Fed. Rep. 1014.) In the Michigan case above cited it is held that where two persons are married and live together as husband and wife until the death of the husband under a mistaken supposition that the wife was divorced from her former husband, she being designated as his wife and beneficiary in his certificate, she is entitled to the benefits accruing under such certificate, notwithstanding the by-laws provide that no certificate shall be made payable to one not a wife, husband, child or dependent of the member. The beneficiary was held to be entitled to the benefit as a dependent. In *Keener* v. *Grand Lodge,* 36 Mo. App. 543, the court uses this language: "I would not restrict dependency to those whom one may be legally bound to support nor yet to those to whom he may be morally bound, but the term should be restricted to those whom

251 — 17

it is lawful for him to support." In *Ballou* v. *Gile,* 50 Wis. 614, the Supreme Court defined "dependent" as follows: "We think the true meaning of the word 'dependent,' in this connection, means some person or persons dependent for support in some way upon the deceased," and this definition has been quoted and approved by the Supreme Court of Massachusetts in *American Legion of Honor* v. *Perry, supra.* And in *Palmer* v. *Welch, supra,* it was held that an affianced wife is generally not a dependent, yet she, in fact, may be a dependent, and it was so held in *McCarthy* v. *New England Order of Protection,* 153 Mass. 314. Bacon concludes his review of the cases as follows: "From the definition and cases cited it seems that whether or not a person is included among the dependents of a member of a benefit society is a question of fact and that each case must be decided upon its own merits. In accordance with the liberal view of the Supreme Court of Michigan in defining who are included in the term 'family,' we should say that if any person, relative of the member or not, was supported by him, directly or indirectly, or wholly or in part, at his home or abroad, because of a legal or moral obligation or merely from affection, such person might be called a dependent and be designated as the beneficiary of such member. But in all cases it would appear essential to apply the test of good faith, for mere capricious liking or temporary liberality in the way of gifts would not make the recipient a dependent." In *Alexander* v. *Parker, supra,* this court defined a dependent as follows: "Dependence for favor, or for affection, or for companionship, or as servants or retainers, is excluded. A dependent, as the term is used in reference to these benevolent associations, is one who is sustained by another or relies for support upon the aid of another."

It is not sufficient to make one a dependent that the member may occasionally make presents of articles of clothing, jewelry or money, but there must be some undertaking

on the part of the member to make substantial and continuous contributions toward the support of the beneficiary, so that it can be fairly said that the beneficiary depended wholly or in part upon such contributions for support and maintenance. This definition seems to be well expressed by the Supreme Court of Massachusetts in *McCarthy* v. *New England Order of Protection, supra,* where it is said: "Trivial or casual, or perhaps wholly charitable, assistance would not create a relation of dependency within the meaning of the statute or by-laws. Something more is undoubtedly required. The beneficiary must be dependent upon the member in a material degree for support or maintenance or assistance, and the obligation on the part of the member to furnish it must, it would seem, rest upon some moral or legal or equitable grounds, and not upon the purely voluntary or charitable impulses or dispositions of the member." The *McCarthy case* is approved on this point by this court in *Alexander* v. *Parker, supra.*

The intimation of the Massachusetts court that the obligation of the member to furnish such support should rest upon some "moral, legal or equitable ground" seems to have been understood by the Appellate Court in this case as excluding cases like the present, where the member voluntarily assumed the relation of benefactor to a worthy needy person. This, I think, is an erroneous view and gives the word "dependent" a construction which is entirely too restricted. In the case at bar the evidence is uncontradicted that Mr. Shields contributed on an average of $50 per month to the support and maintenance of Frieda Wassmann and her mother. There is not an intimation in this entire record that there was any improper relation between these parties or that Mr. Shields was not actuated by the purest and best of motives. At his suggestion Frieda Wassmann gave up her regular employment and devoted her time to nursing and caring for her invalid mother. Mr. Shields told her that if she would take that course he would

provide for her as an adopted daughter. She relied upon his promise, which he faithfully kept as long as he lived. While there was no blood relation between Mr. Shields and Frieda Wassmann, she was as much dependent on him as she would have been if she had been his niece or other distant relative. If the parties had been related, but not in that degree which imposes the legal duty of support, under the facts in this record no one could question that Frieda Wassmann was a dependent. I see no reason, either in law or good morals, why appellant's case does not rest upon the same footing. The deceased member in the case before us was childless and wealthy. He found in appellant a person whom he regarded as worthy of his benefaction. He voluntarily assumed the burden of contributing to her support in a regular and substantial manner and did so regularly for nine years before his death. In my opinion these facts bring appellant within the definition of a dependent, and as such made her eligible as a beneficiary under the statute and the by-laws of the Royal League and entitled her to the money paid into court by the association.

CARTWRIGHT and FARMER, JJ., also dissenting.