ANTONY PEETERS, Plaintiff-Appellant, *v.* CHICAGO DISTRICT COUNCIL OF CARPENTERS WELFARE FUND *et al.*, Defendants-Appellees.

First District (3rd Division) No. 79-1947

Opinion filed December 17, 1980.—Modified on denial of rehearing July 22, 1981.

Vanderwater, Gooding & Schroeder, Ltd., of Aurora, for appellant.

John D. Gorby, of Chicago, for appellees Chicago District Council of Carpenters Welfare Fund and Aetna Life Insurance.

Bernard M. Talbert, of Chicago, for appellee Blue Cross.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Antony Peeters, brought this declaratory judgment action against defendants seeking reimbursement for a claim under an insurance policy. Both sides sought summary judgment, and plaintiff appeals from the trial court's grant of summary judgment in favor of defendants.

Plaintiff sought a declaration that defendants were liable for medical expenses incurred by plaintiff pursuant to an agreement whereby plaintiff agreed to pay delivery and hospital expenses of the child he hoped to adopt. Plaintiff and the natural mother entered into the agreement prior to her giving birth to the child. Plaintiff took the child into his home five days after birth, and the decree of adoption was entered eight months later. Plaintiff submitted a claim under an insurance policy he had obtained as a carpenter with defendant, Chicago District Council of Carpenters Welfare Fund. The other defendants, Aetna Life Insurance Company and Blue Cross, are the welfare fund's underwriters.

Plaintiff invoked as a basis of the claim for reimbursement a clause in the policy which insures him for medical and hospital expenses for his spouse "and any children * * * who are dependent upon you for support." The welfare fund rejected plaintiff's claim on the basis that the child was not a dependent within the meaning of the insurance contract at the time the expenses were incurred. In granting summary judgment, the trial court ruled that the child was not a dependent until plaintiff obtained custody and therefore, the child was not a dependent at the time the expenses were incurred.

We initially must discuss defendants' argument that the words "of the insured" should be read into the policy after the words "any children" so that the phrase reads "any children of the insured." Plaintiff counters that the language "any children" is to be given its literal meaning. The rules of

construction of contracts for insurance mandate that we give effect to the plain and ordinary meaning of all unambiguous words. (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.) We are unable to find any ambiguity in the phrase "any children," and therefore, we agree with plaintiff that the phrase must be given its literal meaning.

The parties' dispute centers on the test for dependency. There exists a legal obligation to support a spouse, natural children and adoptive children. The obligation is imposed by the law, independent of any private, contractual obligation. We believe that in the context of medical insurance, a "legal obligation" to support cannot be expanded to encompass all contractual obligations arising solely by private contract. To define legal obligation so broadly would be to permit one party to an insurance contract to unilaterally contract with third persons to expand the insurer's liabilities beyond the scope originally contemplated by the parties. Such a problem is nonexistent in the fraternal benefit association context, where the association's liability is fixed (a lump sum death benefit), and where the only issue is to whom that fixed liability extends. (*Royal League v. Shields* (1911), 251 Ill. 250, 96 N.E. 45.) In contrast, the medical expense insurer faces potentially unlimited liability for which the insurer freely bargains in reliance on risk factors and probabilities. We therefore hold that a contract to provide support entered into by an insured alone may not be sufficient to create a dependency based on a legal obligation for which an insurer will be liable for medical benefits.

Nevertheless, a valid and enforceable contract for adoption whereby an insured agrees to provide support may be relevant to determine whether based on a moral obligation to support, a dependency exists. Contracts for adoption are specifically enforceable; such enforcement triggers the reciprocal legal rights and duties of parent and child. (*Monahan v. Monahan* (1958), 14 Ill. 2d 449, 153 N.E.2d 1; *Soelzer v. Soelzer* (1943), 382 Ill. 393, 47 N.E.2d 458.) When a valid and enforceable adoption agreement is transacted, the adopting party has the parent's irrevocable consent to adopt, subject only to certain conditions subsequent that an agency approve the potential parent. (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—6 (current version at Ill. Rev. Stat. 1979, ch. 40, par. 1508).) A moral obligation to provide support may arise when a party enters a valid contract to become the legal parent of a child.

In the present case, however, plaintiff did not act pursuant to an enforceable contract, and therefore, the family connection was too tenuous and remote to support a finding of a moral obligation to support. The Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—8 (current version at Ill. Rev. Stat. 1979, ch. 40, par. 1510)), requires that the natural parent consent to the adoption as a condition precedent to the formation of a valid adoption contract. (*In re Adoption of Burton* (1976), 43 Ill. App. 3d

294, 356 N.E.2d 1279.) A consent to adoption not acknowledged in writing and not in the proper form is void. (*In re Adoption of Hoffman* (1975), 61 Ill. 2d 569, 338 N.E.2d 862, *cert. denied* (1976), 425 U.S. 958, 48 L. Ed. 2d 202, 96 S. Ct. 1738.) Moreover, any such consent rendered prior to 72 hours after the birth of the child is revocable. (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—9(B), (current version at Ill. Rev. Stat. 1979, ch. 40, par. 1511(B).) The consideration for the adoption contract was the mother's consent to give her yet unborn child up for adoption. Because the consent was obtained prior to 72 hours before birth, however, the mother was not bound from the inception of the contract to relinquish her child for adoption. (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—9 (current version at Ill. Rev. Stat. 1979, ch. 40, par. 1511).) The contract therefore lacked mutuality of obligation, rendering it void. (See *Kraftco Corp. v. Koblus* (1971), 1 Ill. App. 3d 635, 274 N.E.2d 153.) Nor does the eventual consummation of the adoption somehow cure the defect which existed at the contract's inception for purposes of the present case. At the time the contract was entered into, it was unenforceable. For that reason, it could not provide the basis for a moral obligation to support. The contract expressed only a desire to adopt.

Plaintiff also maintains that, despite the contract's invalidity, "whether based on moral notions of the sanctity obligation exists to support." Plaintiff thus invokes a type of estoppel or quasi-contract theory. Such theories focus on the conduct of the contracting parties, but the issue of whether a *de facto* family relationship existed here requires an examination of the plaintiff's relationship to the child. The acts of the putative mother are therefore irrelevant to the question whether plaintiff's actions stemmed from a moral obligation to support.

In the absence of an enforceable agreement, plaintiff's desires did not ripen into a moral obligation to support until some *de facto familial* connections pertained between him and the child. (*Royal League v. Shields* (1971), 251 Ill. 250, 255; see also *Faber v. Industrial Com.* (1933), 352 Ill. 115, 120, 185 N.E.255, 257 (*de facto* parent-child relationship exists between a non-relative and a child whom the adult continuously supports in the home); *Superior Coal Co. v. Industrial Com.* (1922), 304 Ill. 320, 322, 136 N.E. 762, 762-63 (moral obligation to support exists between a grandfather and his grandchild).) The trial court so recognized this requirement when it held that the child, under these facts, became dependent when its natural mother relinquished custody of the child to plaintiff. In the absence of any enforceable adoption contract, we think the assumption of custody of the child did mark the inception of a *de facto* family relationship sufficient to support a finding of a moral obligation. Prior to the taking of custody, and in light of the mother's right to revoke her consent, any family connection between the plaintiff and

the child at the time the expenses were incurred was remote and tenuous. Under the undisputed facts of this case, we hold that plaintiff's unenforceable contractual adoption agreement did not give rise to either a legal or a moral obligation sufficient to constitute a dependency relationship between the child and plaintiff. The child was not a dependent under the policy at the time plaintiff committed himself to incur the medical expenses at issue here.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.