# SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. NOEL (DAVIS *et al., Interveners*).

No. 1463. Opinion Filed September 17, 1912.

(126 Pac. 787.)

1. INSURANCE — Mutual Benefit Insurance—Construction of Contract—"Dependent." Where the constitution and by-laws of a fraternal benefit association and the statutes under which its charter is obtained, each authorize the issuance of beneficiary insurance certificates to members of the family, heirs, blood relation, or persons dependent upon the member, the term "dependent," as therein used, is intended to include persons other than members of the family, heirs, or persons related by blood.

2. SAME. To entitle the beneficiary, who bears the relation of dependent, to recover on a certificate, the law does not undertake

to prescribe just what degree of dependence is necessary. The test in each case should be good faith, purity of purpose, material dependence, and material support.

(Syllabus by Harrison, C.)

*Error from McClain County Court;*
*E. E. Glasco, Judge.*

·Action by Eura Noel against the Sovereign Camp of Woodmen of the World; and J. S. Davis, Bill Davis, Amos Davis, and Telitha Davis, intervene. From the judgment, the defendant brings error. Affirmed.

This action was begun in the county court of McClain county December, 1908, by plaintiff, Eura Noel, to recover the sum of $500 claimed to be due her on a beneficiary certificate issued by defendant camp for $1,000. The certificate in question was issued to one Abner Davis, a member of Sovereign Camp No. 93, of Purcell, Ind. T., which provided that in case of death within one year after date thereof, the beneficiary therein named should receive only $500. Davis died only a few days within one year of the date of the policy. The plaintiff, Eura Noel, was named as beneficiary therein; the said beneficiary being designated as one who bore the relation of dependent on the insured. The petition alleged that plaintiff was the beneficiary named ·in. the certificate; that at the time of the issuance of said certificate, and for a period prior thereto, and from the date of said certifi-· cate to the time of deceased's death, she had been dependent on deceased for support, and that at the date of such certificate she was the affianced wife of deceased; that defendant had refused payment of said certificate; that she was entitled to payment of same. Wherefore, she asked judgment in the sum of $500. Defendant answered, denying liability under said certificate, for the reason that the Sovereign Woodmen of the World, under the provisions of its amended constitution, was not authorized and had no power to name an affianced husband or wife as a beneficiary in its certificates, and that for such reason the issuance of such certificate was *ultra vires* and void, and for the further reason that plaintiff was not such a dependent as is contemplated in law, and therefore defendant was not liable to plaintiff from

any standpoint. Subsequently interveners filed their petition, denying that plaintiff was entitled to the amount due under such policy, but alleging that the interveners, as brothers and sister of deceased, were entitled to same. In September, 1909, the cause was tried, resulting, September 24th, in a verdict in the sum of $500, and interest at 6 per cent. from February 9, 1908, in favor of the plaintiff. Whereupon defendant and interveners each filed separate motions for a new trial, which motions were overruled and judgment rendered in favor of plaintiff. From this judgment defendant, plaintiff in error, appeals. Plaintiff in error, defendant in error, and interveners have each filed briefs in this court.

*Maxey, Leahy & Campbell,* for plaintiff in error.

*Rennie, Hocker & Moore,* for interveners.

*J. F. Sharp,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above). Five assignments are presented by plaintiff in error, but all are conceded to be involved in, and all are presented and argued under, the one proposition, viz.:

"That the court erred in overruling the motion of plaintiff in error at the close of the testimony for a peremptory instruction directing the jury to find the issues in this cause for the plaintiff in error as against both plaintiff (defendant in error) and interveners (also defendants in error), for the reason stated in said motion, which was excepted to at the time."

The decisive question raised in the motion for peremptory instruction, in fact, the question upon which the entire case hinges, is whether the plaintiff, beneficiary, was such a dependent as is contemplated by law. Plaintiff contends that she was. Defendant contends that she was not. This is the issue to be determined. All other questions involved in the case are decided by a determination of this question. Owing to the fact that fraternal benefit associations are of comparatively modern origin, this question has not very frequently been before the courts, and in the cases where the courts have been called upon to decide who were "dependents" within the meaning of the statutes and by-

laws of the order, the question has been decided upon the particular facts in each case, rather than by any settled rule of law or universal definition of the word.

One of the earliest cases in which this question was directly before the courts was *Ballou v. Giles,* 50 Wis. 614, 7 N. W. 561, opinion December 17, 1880. In this case one Walter H. Ballou was a member of the Royal Arcanum, a benefit society organized under the laws of Massachusetts. As a member of such society he had received a benefit certificate entitling the beneficiaries therein named to $3,000 at his death. He named his infant children as beneficiaries. The children died before he did. He died intestate and without changing the name of the beneficiaries named in his certificate. After his death, his widow claimed the amount due thereunder as a dependent. The administrator of his estate claimed it for the creditors of deceased. The company paid the money into court and left it with the courts to determine to whom it should be paid. The widow's right to recover depended solely on the fact whether she was a dependent within the meaning of the statute and the by-laws of the order. The court said:

"We think the true meaning of the word 'dependent,' in this connection, means some person or persons dependent for support in some way upon the deceased; and, as the proof shows that there was no other person so dependent upon the deceased except the widow, the money must be paid to her."

The next important case wherein the same question was before the court was *American Legion of Honor v. Perry,* 140 Mass. 580, 5 N. E. 634, opinion January 11, 1886. In this case the beneficiary named was deceased's wife. The wife died first. After her death no change was made in the certificate directing the payment to other beneficiaries. After the death of his wife, the insured, Samuel B. Berry, became engaged to be married to one Augusta Wallace. He died, however, without marrying her, but before his death made a will bequeathing to her the amount due under the insurance certificate. In the courts she claimed the amount due from the policy, or beneficiary certificate, as the affianced wife of deceased. The widowed mother of deceased claimed it as a dependent. The court followed the

definition given of the word "dependent" in *Ballou v. Giles, supra,* and, under the facts in the case, awarded the proceeds of the certificate to the mother as dependent, and denying the right of Augusta Wallace to recover as his affianced wife, on the ground that her being the affianced wife of deceased was not of itself sufficient to entitle her to recover; the facts not warranting her recovery as a dependent.

In 1893 the same question was before the Supreme Court of Illinois in *Alexander v. Parker,* 144 Ill. 355, 32 N. E. 183, 19 L. R. A. 187. In this case the certificate was issued to one Edwin H. Turner, who named as beneficiary Mrs. Laura M. Parker (affianced wife). · The deceased left some children by a former wife. The children claimed under the law. The affianced wife claimed under the terms of the certificate as beneficiary therein. Neither the statutes under which the order was organized, nor the by-laws of the order itself, authorized the payment of such certificate to an affianced wife merely as such, but both the statutes and the laws of the order provided, in substance, that payments might be made to widows, orphans, or other relatives of deceased members, or persons dependent upon deceased members. The affianced wife's right of recovery depended solely upon the question of fact whether she was dependent for support upon deceased. The court held that the fact that a woman is the affianced wife of a deceased member of a benefit society does not of itself as a matter. of law make her dependent upon him, but further held:

"The designation of the person named in the certificate of membership as the 'affianced wife' for the beneficiary is not sufficient to preclude an examination of the evidence for the purpose of determining whether, as a matter of fact, the person so named was really dependent upon the deceased member or not. Whether a person is included among the dependents of a member of a benefit society is a question of fact, and each case must be decided on its own merits."

The facts in the above case showed that the beneficiary had a commercial education; that she had a situation in the office of the collector of internal revenue, earning a salary of from $400, $500, to $600 per year; that she had no children, and lived with

her mother and married sisters; that after leaving the revenue office she worked for a while in a bank at $1 per day, also for a safe and lock company at $3 per week; worked a while in a store for $20 per month; also received assistance and support from her mother and sisters and brothers-in-law; that such contributions as had been made by deceased consisted mostly of mere occasional presents or gifts, and that as a matter of fact, she was in no wise dependent upon deceased for material support. Hence, the court on these facts denied her the right to recover.

In November, 1905, the same question was before the Supreme Court of California in *Caldwell v. Grand Lodge,* 148 Cal. 195, 82 Pac. 781, 2 L. R. A. (N. S.) 653, 113 Am. St. Rep. 219, 7 Ann. Cas. 356. This case, however, is in no wise applicable to the case at bar. The facts in the Caldwell case were that the beneficiary named was a married woman who had a living husband with whom she lived; one who was capable of supporting her, and who was supporting her. On the question as to whether the facts made her a dependent within the meaning of the law, the court held:

"The 'dependence' which is there meant is a dependence resting upon some moral, legal, or equitable ground, not a dependence which is only a matter of favor, founded upon the mere whim or caprice of the member, and which may be cast aside without violating any legal or moral obligation."

A recent case on this question, cited by counsel for plaintiff in error, is *Wassman v. Cardan,* 251 Ill. 250, 96 N. E. 45, 36 L. R. A. (N. S.) 208. The facts in the case are substantially: That one Michael Shields, a member of the Royal League, held a beneficiary certificate from such league for $4,000, $1,000 payable to one and $3,000 to another of two of his nieces who were named as his beneficiaries. The one who was to get $3,000 died, and the one who was to get $1,000 married before the death of the insured. Thereupon, Shields had his certificate changed, naming one Frieda Wassman as the sole beneficiary. Said beneficiary was the daughter of a widow, neither of whom was related by blood or marriage to Shields. The opinion shows the testimony to have been that Shields first became acquainted with the bene-

ciary some ten years before his death, she at that time being a girl nineteen years of age, and engaged in the occupation of a manicurist. Subsequent to this time her mother became ill, necessitating the beneficiary's abandoning her work and going home to attend on her mother. The mother in the meantime had met with financial reverses through the failure of a bank in which she had lost all her money. Learning of this, Shields offered to help, and did help, the mother and daughter, contributing regularly, in money, to their support, and promised her mother, or agreed with her mother, that, if the daughter would stay at home and wait upon her, he, Shields, would support her as an adopted daughter, so that she would not be compelled to leave her mother and go back to her former occupation to earn a living. He further informed the mother and daughter some years thereafter that his wife being rich in her own right, he having no children, and his surviving niece having married and being well provided for, he had named the daughter, Frieda Wassmann, as beneficiary in his certificate. Upon his death, Frieda Wassmann claimed the $4,000 as a dependent beneficiary. The surviving niece, Agnes Cardan, claimed it as a relative. The court held that under the state of facts contained in the record Frieda Wassmann was not entitled to the money, but quoting from the opinion of *Alexander v. Parker*, 144 Ill. 355, 33 N. E. 183, 19 L. R. A. 187, the court says:

"The chief contention here is whether Frieda Wassmann was a dependent upon Michael Shields. Dependence is a question of fact, and the facts in each case alone determine whether or not the beneficiary is a dependent, as that term is used under the statute and in the contract of insurance."

Further discussing this feature of the question, the court quotes from *Carmichael v. Mut. Ben. Ass'n*, 51 Mich. 494, 16 N. W. 871, wherein the Michigan court says:

"Dependency cannot rest alone on a promise or contract—it must be decided from the facts existing in each case. A state of dependency might exist, even though no legal or moral duty rested upon the member to give aid to the dependent. I Bacon on Ben. Soc. & Life Ins. (3d Ed.) sec. 261. While no definition of dependency can be given that will include every case and each case must be decided according to its particular merits, the

word 'dependent' as that term is used with reference to these fraternal benefit associations is in some sense, at least, used as similar to the dependence which usually obtains in the family relation. *Modern Woodmen of America v. Comeaux,* 79 Kan. 493 [101 Pac. 1, 25 L. R. A. (N. S.) 814, 17 Ann. Cas. 865]."

It will be observed that, while in each of the foregoing cases the beneficiary has been denied recovery, yet the reason for so doing was because the facts were insufficient to maintain the claim of dependence. In neither case has the court denied the true rule to be that dependents should recover where the facts bring them within the meaning of the term. It may further be observed that the case at bar is different from the cases above cited, in that in those cases the beneficiary was either an affianced, claiming solely as such, or was claiming as a dependent, not affianced, under circumstances where there was neither legal, moral, nor manly obligations on the part of the deceased to support them. In this case the plaintiff, though the affianced, is claiming as a dependent. The by-laws of the order authorize dependents to be named as beneficiaries. The statutes under which the order obtained its charter authorize the same. The plaintiff herein was named as beneficiary, bearing the relation of a dependent. She asks a determination of her rights in the premises. It is not an unusual demand, nor one which tends to thwart the laudable purposes of the order. She is simply asking for that which both the statutes and the rules of the order authorize her to receive. Hence the only question is whether the facts bring her within the rule. It is not a question of protecting the order against vicious and unjust verdicts, as suggested by counsel. It is simply a question of determining the legal rights of parties in a controversy wherein equal justice shall be meted out to each.

The evidence shows: That plaintiff and deceased first met at the home of plaintiff's married sister at the time deceased was sick, and was nursed and waited upon by plaintiff. That after his recovery he paid her $50, after having first discussed the matter with her married sister and husband. At the same time it was also discussed and agreed among all the parties—that is, the deceased, the married sister and her husband, and the plain-

tiff—that deceased having no one dependent upon him, and plaintiff having no one on whom to depend, he would continue to contribute to her support. That within a short time thereafter plaintiff informed deceased that she was going to get married to a man by the name of True. Deceased informed her that such fact should make no difference with them, and that he would continue to contribute to her support and help her set up housekeeping when she got married. This matter was also discussed and agreed upon by deceased and plaintiff and her husband after she got married. The testimony shows that deceased had known plaintiff when she was a child, he being several years her senior, but had not seen her for some years till he met her at her sister's; that one of his brothers had married a relative of hers, which fact possibly brought about his first inclination to help her. The testimony further shows that after her marriage to True, which took place in Illinois, she and her husband lived together only two weeks. The husband left her at her sister's, returning to his mother's in Kentucky. It seems that the mother was very bitterly opposed to the marriage, and refused to allow the girl, plaintiff herein, to come to her home in Kentucky. The testimony does not show to what extent the husband was influenced by his mother's interference, but does show that he never returned for his wife, never provided a home to take her to, other than that of his mother, never contributed anything to her support, but within about a year after the marriage obtained a divorce. Deceased in the meantime, though he had never seen the plaintiff during the time, being away in other states, had continued to contribute to her support, having in the meantime been informed of her desertion by her husband, and of the fact that a divorce had been granted. The plaintiff was desirous of becoming a professional nurse, a trained nurse, and, being unable to earn sufficient means by which to pursue her study, deceased had helped her in this regard. These contributions to her support were kept up regularly until after learning of plaintiff's divorcement, when deceased, through letters, proposed marriage, which proposal was accepted, and from the time of the engagement deceased continued regularly to contribute $10 to $25 a month towards her

support as his affianced wife, and she, being unable to support herself and to earn enough by which to educate herself as a trained nurse, continued to more and more rely upon deceased for the support she needed. After they became engaged, deceased took membership with the Woodmen of the World, and procured the issuance of the beneficiary certificate herein sued on. The evidence shows that deceased was in good standing in the order at the time of his death; that the order had received his application, and issued the certificate in question thereon. The application is in the record, and the evidence shows that deceased was illiterate and unable to read and write. It shows the application to have been made out by some one else and signed by mark. Under these circumstances, there must have been some discussion or some questions asked as to the degree of the girl's dependency at the time the application was made. The deceased being unable to write the application himself, and such application having been filled out by some clerk of the order, or some other person, it is only reasonable to suppose that the word ".dependent" was inserted at the suggestion of the party making out the application, rather than by the applicant himself. Whether this be true or not we cannot say. We mention this because the defendant, plaintiff in error here, contends that the certificate was obtained through fraud and false representations. From an examination of the record we fail to find any valid basis for the contention. Deceased had named plaintiff as the beneficiary, and designated her as a dependent. After the death of deceased, the order instituted an investigation as to the degree of her dependence, had considerable correspondence, took her deposition, and refused payment of the certificate. Whereupon the plaintiff brought this suit. The issue to be tried was the simple question whether her dependence was of that degree which would justify a recovery. In determining this issue there were other circumstances to be considered therewith, among which were: The amount of support, the obligation to give same, the fact of her being the affianced wife, and the fact whether a judgment in favor of plaintiff under this evidence, and under the circumstances, would do any violence to the purposes of the order. These ques-

Sovereign Camp of Woodmen of World v. Noel (Davis et al., Interveners).

tions were all before the court and the jury, and from the evidence in the case and the circumstances surrounding same the jury found as a fact that she was a dependent within the meaning of the law and the rules of the order, and from a study of the record we see no reason for disturbing the verdict. The courts have universally considered this to be a question of fact, to be determined from the evidence in each individual case. There being a jury in this case, which jury had all the facts and testimony before them, and being the exclusive judges of the facts, and having found as a fact that she was a dependent, we do not feel justified in disturbing such finding.

The statutes under which the order obtained its charter provide that the families, heirs, blood relation, affianced husband, affianced wife, or persons dependent upon the member may be named as beneficiaries. The amended constitution of the order provides: That certificates may be issued to the families, heirs, blood relation, or to persons dependent upon the member. It is evident therefore, that, in order to bring a person within the meaning of the term "dependent," it is not necessary that they be a member of the family, an heir, or a blood relation. Hence, in all cases, where the beneficiary claims as a dependent, the right of recovery must depend on the finding of fact as to whether the claimant is or is not a dependent. It is impracticable for a court to define just what degree of dependence is necessary to a recovery. The amount of support or number of dollars contributed in one case might be sufficient to warrant a recovery, while in another, as in cases where the alleged dependents had ample means of support in their own right, or by their own efforts, or where the contributions were more in the nature of gifts or presents, it would not be sufficient. The test in any case should be the question of good faith, purity of purpose, a material dependence and material support on the part of the dependent and on the part of the person contributing to their support. There is nothing in this record which warrants the contention of bad faith. There was no error in the court's refusal to peremptorily instruct for defendant.

The judgment should be affirmed.

By the Court: It is so ordered.