11215. Sovereign Camp of the Woodmen of the World *v.* Warner, by next friend.

Luke, J. There is no assignment of error upon the exceptions pendente lite, in the main bill of exceptions, nor in this court; hence the questions that could have been raised by a proper assignment of error upon the exceptions pendente lite are not considered by this court.

The evidence authorized the verdict, which has the approval of the trial judge. For none of the reasons assigned was it error to overrule the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*

Decided July 14, 1920.

Action on insurance certificate; from city court of Savannah — Judge Freeman. December 15, 1919.

As a beneficiary "dependent upon" H. P. Gallagher, Fay Gallagher Warner, a minor, sought, in an action brought by next friend, to recover the death benefit provided for in a certificate in which she was named as the beneficiary, issued to H. P. Gallagher by the defendant, a fraternal benefit society of which he was a member. Although she was described in the certificate and in the original petition as his niece, she was not his niece, but a niece of his deceased wife; and by amendment to the petition it was alleged that she was "dependent upon" him at the time the defendant inserted her name as beneficiary in the certificate and up to the time of his death. This amendment was allowed over the objections that it attempted to change the plaintiff's status as beneficiary and set up a new cause of action. Pendente lite exceptions to the allowance of the amendment, as well as to the overruling of a demurrer to the petition, were specified and sent up as a part of the record, and the final bill of exceptions, after stating these rulings and stating that these exceptions pendente lite had been filed, assigned error "upon the judgment overruling the said demurrer," and "upon the judgment overruling said objections" to the allowance of the amendment.

The defendant contended that under the evidence the plaintiff was not a "dependent" within the meaning of the law and of the certificate; the jury found in favor of the plaintiff. In the charge to the jury the judge, after charging that the plaintiff was not entitled to recover as a niece, charged, among other things, as follows: "The only issue in this case, as I see it, is whether or not this young lady was a dependent of Mr. Gallagher. If she

was, she is entitled to recover under this action on this benefit certificate. If she was not a dependent, then she is not entitled to recover. . . I have listened with a great deal of interest and have been much instructed by the various authorities that have been submitted to me upon this question of dependency, and I have come to the conclusion that it is proper for me to charge you on that subject in this wise: With reference to contracts of this sort and these beneficiary societies, where the statute and the contract, including the by-laws, provide for the payment of benefit funds to persons dependent upon the members, the word 'dependent' means some person or persons dependent for support in some way upon the deceased. A 'dependent,' as the term is used in reference to these policies, is one who is sustained by another or relies for support upon the aid of another. That does not mean (and excludes to us) the idea of being dependent upon some one for his favor or for his affection, or for companionship, or as a servant or a retainer. That idea of dependency is excluded. A dependent has been defined by the lexicographers as one who is dependent, one who is sustained by another or who relies on another for support, one who reasonably relies upon another for subsistence, nourishment, and support." The court then gave the following instruction, the only one complained of in the motion for a new trial: "A person, whether a relative or not of a deceased member of such an order to whom has been issued a certificate, who was in good faith supported by him, wholly or in substantial part, at home or abroad, because of a legal or moral obligation, or because of affection merely, may be designated as the beneficiary of such a member." The words "or because of affection merely," the motion states, are "the portion objected to and in which the court erred." It is alleged that this language tended "to create the impression upon the minds of the jury that if one contributed to another because of affection for such person, whether any dependency actually existed or not, it would have the same effect,— that is, the plaintiff would be entitled to recover." The charge proceeded as follows: "The essential point is to determine dependency. Did this young lady depend for her support in any substantial or real sense upon Mr. Gallagher? Or were his benefactions and gifts to her, of one sort and another, simply the expressions of an affection, and not for the purpose of

support and maintenance? So, I say, if you find from the evidence that Mr. Gallagher made substantial contributions to the support of Miss Warner, but that she was not partially dependent on these contributions for her support, you would not be authorized to find for the plaintiff, and your verdict in that event would be . . for the defendant. If you find from the evidence that the insured, Mr. Gallagher, from time to time made to Miss Warner presents of clothing or money, or what not, and that they were made for the comfort of Miss Warner, and that she was not partially dependent upon these presents for support, you would find for the defendant. But should you find that Mr. Gallagher made contributions of clothes or money and they were substantial contributions, and that Miss Warner, within the life of the policy during which she was declared to be dependent, was as a matter of fact partially dependent upon Mr. Gallagher for a support, and the contributions and dependency existed as stated, you would be authorized to find for the plaintiff, upon her claim under this policy. . . You will bear in mind that this is a suit on a contract. · Whatever her rights are, no matter what the nature of the organization that issued the contract, they are bound by the four corners of this contract, and these four corners include the by-laws and rules of the organization, . . introduced in evidence before you."

The by-laws of the defendant provide that the benefit payable on the death of a member shall be paid " to the person or persons named in his certificate as beneficiary or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers and sisters or other blood relations, or to persons dependent upon the member." By the act of 1914 as to fraternal benefit societies (Ga. L. 1914, p. 101, sec. 6, Park's Code, § 2564 (v) ), cited in the briefs, it is provided that " The payment of death benefits shall be confined to " certain classes of relatives, " or to a person or persons dependent upon the member."

The benefit certificate sued on was issued in 1915. H. P. Gallagher's wife was then dead and he had no child. From the evidence it appears· that the plaintiff was then twelve years old and was living with her parents, and she· continued living with them for the remainder of Gallagher's lifetime. He died in 1918. During this period her father was supporting his family,

which included several other children, and his earnings ranged from $23 a week in 1915 to $36 a week in 1918. On direct examination the plaintiff testified: "I was dependent upon Mr. Gallagher before his death. The way in which I was dependent was that as long ago as when I was a little over two years old I went off to Texas with my uncle, . . and stayed three years with them and did not know any other father and mother except my uncle and his wife; and my mamma and papa wrote for me, but I did not want to leave, and they wanted to legally adopt me, but my father and mother objected and brought me home; and so my aunt died and she was brought here, and my uncle came with her, and when he came he gave me clothes and furniture, and he went back to Texas and sent me money, sometimes as much as $50 at one time; and then he left for Texas for good and came to Savannah and stayed a while, and then went off to Cleveland; and from there he also sent me money, clothes, or anything I wanted. He told me to write him and let him know if I needed anything and he would send it, and I would always write when I wanted anything, and I always felt towards · him just as a father. I looked upon him as a father and looked to him to furnish me those things. I kept in correspondence with him; while he was away the whole time he wrote me, and always signed his letters, 'Your Texas Daddy,' I always wrote to him whenever I needed anything and wanted it, and he always responded in furnishing those things. I am named after him. After his wife died he sent all the furniture they had home, and also all of her jewelry; he gave it to me, and he left all the silver to mother. He brought it with him. He left me his trunk and his suitcase, and said he would not need it, and he always told me everything at his death was mine, and that he had no relatives at all." On cross-examination the plaintiff testified, that after her return from her three-years visit to Mr. Gallagher and his wife in Texas, they sent clothing and money to her, and he would send to her "every month, from time to time," articles that she needed; she did not have to write; she wrote and asked for things and he responded; he kept that up until he died; she received, she supposed, five or six hundred dollars after her return from Texas; she needed things and he voluntarily gave them to her. The plaintiff's mother testified, that Mr. Gallagher sent

things to the plaintiff from the time she was a month old until he died, and he told the plaintiff he would always support her; "he contributed to her support all the way through; he said he felt like she was his own child and was all he had; . . he contributed to her during this time something between five and six hundred dollars in actual money, besides clothing and the household furniture; he always fitted her out each season;" her father "contributed very little to her support;" the wages he made were not sufficient; "of course her father supported the family and she lived with us;" "she lived at home, ate at home, and stayed at home the same as the rest of the children; all that she got outside of that was what was given her by Mr. Gallagher." "He just sent money for her support; he said he intended to support her just the same as if she' was with him, because he considered her his own child;" "he contributed right along, all the time, every month or two; sometimes he would send $50, sometimes $25; . . he sent $50 some months before he died." "I. suppose it was a voluntary gift on his part; he was under no obligation from a parental standpoint; he knew I had a large family, and it was all we could do to do for those." The plaintiff introduced in evidence an affectionate letter of H. P. Gallagher to her, dated December 12, 1915, referring to Christmas and saying, 'You take this $50 and buy yourself and also something for the others after you are fixed up yourself,' and concluding, "I still remain your Tex Dady."

One of the grounds of the motion for a new trial was that the letter of H. P. Gallagher to the plaintiff was admitted in evidence over the objection that it showed merely a gift to her and to others, and did not tend to show dependency. The plaintiff's testimony on direct examination was objected to as a whole, the defendant objecting "to bringing out anything of that kind, . . for the reason that the policy sets out that she is a beneficiary as a niece, and the application for insurance was not made for a dependent, but made [for one named] as a niece." In the motion for a new trial the admission of this testimony was alleged to be error because in this action as originally brought the plaintiff was designated as a niece, and the testimony was intended to support a new cause of action, to wit, dependency; and "it did not itself show such a ground, even if such a claim could now

be set up." In another ground it is alleged that the court erred in admitting in evidence, over the objection that it had nothing to do with the present cause of action, a benefit certificate issued by the defendant in 1909 to H. P. Gallagher, naming his wife as beneficiary, which was surrendered on the issuance of the certificate sued on, and on which was written a direction by him that a new certificate, naming Fay Gallagher Warner as beneficiary, be issued in lieu of the surrendered certificate. Exceptions were taken also to the refusal to grant a nonsuit and the refusal to direct a verdict for the defendant.

*William R. Hewlett, De E. Bradshaw, J. C. Farthing,* for plaintiff in error, cited, as to dependence: Ga. L. 1914, pp. 99, 101, sec. 6, Park's Code, § 2564 (v); 29 Cyc. 114, 115; 1 Words & Phrases (2d series), 1298; 2 Id. (1st series) 1991; 29 Cyc. 114, 115; Sovereign Camp W. O. W. *v.* Noel, 34 Okl. 596 (126 Pac. 787-9, 41 L. R. A. (N. S.) 648); Ownby *v.* Supreme Lodge 101 Tenn. 16 (46 S. W. 758); Commercial Trav. Asso. *v.* Tennett, 128 Mo. App. 541 (106 S. W. 1073-7); Alexander *v.* Parker, 144 Ill. 355 (33 N. E. 183-4, 19 L. R. A. 187); Caldwell *v.* Grand Lodge, 148 Calif. 195 (82 Pac. 781, 113 Am. St. Rep. 219; 2 L. R. A. (N. S.) 653, 7 Ann. Cas. 356, 358); Murphy *v.* Nowak, 223 Ill. 301 (79 N. E. 113, 114); Martin *v.* Modern Woodmen, 111 Ill. App. 99

*W. B. Stubbs, F. A. Tuten, G. N. Alford,* contra, cited: Grand Lodge A. O. U. W. *v.* Bollman, 22 Tex. Civ. App. 106 (53 S. W. 829); Wolf *v.* Pearce, (Ky. 1898) 45 S. W. 865; Erickson *v.* Modern Woodmen, 43 Wash. 242 (86 Pac. 584); Fuller *v.* Supreme Council, (Ind. App.) 115 N. E. 372; Sovereign Camp W. O. W. *v.* Noel, supra.