SOPHIA DUENSER, Admx., Appellant, *vs.* THE SUPREME COUNCIL OF THE ROYAL ARCANUM, Appellee.

*Opinion filed February 21, 1914—Rehearing denied April 14, 1914.*

1. BENEFIT SOCIETIES—*when payment of benefits cannot be justified upon ground of dependency.* Payment by a benefit society of the amount of a certificate payable to the member's wife, (naming her,) which is made on the supposition that the beneficiary named was the member's lawful wife, whereas she knew, when the marriage ceremony between her and the member was performed, that he had a living, undivorced wife, cannot be justified on the theory that the woman was a dependent, there being no claim of dependency made or suggested until after payment had been made and proceedings instituted by the lawful wife to enforce her rights.

2. SAME—*when woman living with member at his death is not a dependent.* A woman who knows at .the time the marriage ceremony is performed that her supposed husband has a living, undivorced wife, does not, by continuing to live with the man and receiving his support, come within the class of beneficiaries designated by statute and the rules of a benefit society as persons dependent upon the member for support.

3. SAME—*society must know that the supposed wife of a member is his lawful wife.* A benefit society which pays the amount of a benefit certificate to the beneficiary named therein under the designation of wife of the member will not be protected in such payment as against the member's lawful wife, even though the beneficiary named had been living with the member under a ceremonial marriage many years before the certificate was issued and continued to live with him until his death, more than twenty-five years after the certificate was issued.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

TINSMAN & BLOCKI, and RANKIN, HOWARD & DONNELLY, for appellant.

MUSGRAVE, OPPENHEIM & LEE, (GEORGE H. MILLER, of counsel,) for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is an action of assumpsit originally brought in the circuit court of Cook county by Mary Anne Bandlion against the Supreme Council of the Royal Arcanum to recover a benefit of $3000 which the appellee undertook by its constitution and by-laws to pay to the person, within certain classes, who should be designated by William Bandlion, and this suit is brought upon the obligation of appellee as evidenced by its constitution and by-laws. Subsequent to the institution of this suit Mary Anne Bandlion died, and her daughter, Sophia Duenser, was appointed administratrix of her estate, and by order of court she, as such administratrix, was substituted as plaintiff.

The declaration in this case consists of three counts. The first count alleged the issuance to William Bandlion of a benefit certificate for $3000 on the 5th day of October, 1880, by appellee, and the designation therein as beneficiary of Mary Eva (Roth) Bandlion, his wife; that the defendant was a fraternal mutual benefit association organized under the laws of the State of Massachusetts; that on the 14th day of May, 1906, William Bandlion departed this life intestate, a member of the appellee order in good standing, and that due proof of his death was furnished to appellee; that at the time of the issuance of the certificate Mary Anne Bandlion was the lawful wife of William Bandlion and so remained until his death, which facts were known to Mary Eva (Roth) Bandlion; that under the statutes of Massachusetts benefits could be payable only to the husband, wife, betrothed, child by legal adoption, parent by legal adoption, or relative of or a person dependent upon the member named in the certificate, and that the benefit was payable to Mary Anne Bandlion, as she was the only person in the line of eligibles entitled thereto; that under the constitution, by-laws and regulations of the defendant, in the event that the person designated as beneficiary was unable to take un-

der the laws of the order, then the benefit should be payable, first, to the wife of the member. The second count alleges, among other things, that under the statutes of Massachusetts and the by-laws and rules and regulations of the defendant the beneficiaries are limited to certain classes, and that Mary Eva (Roth) Bandlion not being within those classes, her designation as beneficiary was void. The third count consists of the common counts.

The plaintiff filed an amendment to the first and second counts of her declaration, in which she averred that the common law relating to what is known as common law marriages was in full force in the State of Pennsylvania in the years 1853 and 1854, and that said common law was also in existence and in full force and effect in the State of Iowa in the year 1858, and for several years thereafter.

The evidence sufficiently shows the foregoing facts charged in the declaration, and further shows, and the Appellate Court so found as a fact, that William Bandlion, the assured, married Mary Anne Schiel, plaintiff's intestate, in the State of Pennsylvania in the year 1853 or 1854. In 1858 said William Bandlion and said Mary Anne, his wife, with their children, removed to Dubuque, Iowa. Five children were born to them in Pennsylvania and Iowa. He left his family and came to Chicago in April, 1864. His wife, Mary Anne, lived in Dubuque until after his death. Mary Eva (Roth) Bandlion, the beneficiary designated in the benefit sued on, lived in the city of Dubuque in the same block with and a few doors from William Bandlion and his family for several years prior to 1864, and there knew the Bandlions, visited at their home and knew that they were living together as husband and wife, and there is evidence that William Bandlion was in the habit of going to see her. In 1864 she came to Chicago and there met the assured. On March 12, 1868, they were married in Chicago by the pastor of the German Lutheran Church, and

lived together as husband and wife from the time of their marriage until the death of the assured, May 14, 1906. In 1871 a daughter was born to them and lived with them as their child until her marriage, in 1890. On the death of the assured, Mary Eva (Roth) Bandlion submitted proofs of the death of the assured, and the defendant society paid the amount of the benefit certificate to her on July 5, 1906. Thereafter the attorneys for Mary Anne Bandlion wrote to the supreme secretary of the appellee company demanding payment of the amount provided in the benefit certificate, which the appellee refused. On November 19, 1906, Mary Anne Bandlion brought this suit. She died on August 11, 1907, and her daughter, Sophia Duenser, her administratrix, as stated above, was substituted as plaintiff. There was a verdict and judgment for plaintiff for $3000 in the circuit court, from which the defendant prosecuted an appeal to the Appellate Court for the First District, where the judgment of the circuit court was reversed but the case was not remanded. The case is brought to this court by appeal, a certificate of importance having been granted.

The constitution and by-laws of the appellee order, from the record in the case, show the object of the order was to establish a widow's and orphan's benefit fund, which, on satisfactory evidence of death, should be paid to the wife, children, relatives or other persons dependent upon such member, as limited and described in the laws of said order. Section 323 provides that each applicant shall enter upon his application the name, residence, relation or dependence of the person or class to whom he desires his benefit paid. Section 324 is as follows:

"Sec. 324. A benefit may be made payable to any one or more persons of any of the following classes only: Class First, grade 1.—Member's wife. Grade 2.—Member's children, and children of deceased children, and member's children by legal adoption. In either of which cases no proof of dependency of the beneficiary designated shall

be required. * * * Class Second: (1) To affianced wife, or to any person who is dependent upon the member for maintenance, (food, clothing, lodging or education,) in either of which cases written evidence of the affianced relation or dependency, within the requirements of the laws of the order, must be furnished to the satisfaction of the supreme secretary before the benefit certificate can be issued. (2) Neither the decision of the supreme secretary nor the issuance of the benefit certificate shall be conclusive as to the facts of the affianced relation or dependency. (3) If such satisfactory evidence, either of the affianced relation, dependency or legal adoption, is not furnished, as hereinbefore provided, prior to the decease of the member, no benefit shall be paid unless such evidence is furnished satisfactory to the supreme secretary and the examiner of claims."

It is further provided, under the heading "Failure of designation and the death of beneficiaries," that the dependency must exist at death. Sections 329 and 330 read as follows:

"Sec. 329. No benefit shall be payable to a person or persons of Class Second, mentioned in section No. 324, unless the dependency therein required to be shown exists at the time of the member's death, in which case proof of such dependency at the member's death shall be furnished, in writing, to the satisfaction of the supreme regent, whose decision thereon shall be final and conclusive upon all parties in interest before payment of the benefit shall be made.

"Sec. 330. If at the time of the death of a member who has designated as beneficiary a person of Class Second the dependency required by the laws of the order have ceased or shall be found not to have existed, or if the designated beneficiary is his wife and they shall be divorced upon the application of either party, or if any designation shall fail for illegality or otherwise, then the benefit shall be payable to the person or persons mentioned in Class First,

if living, in the shares and order of precedence, by grades, as therein enumerated, the persons living of each precedent grade taking in equal shares, per capita, to the exclusion of all persons living of subsequently enumerated grades."

The Appellate Court found, in substance, that notwithstanding the fact found by it and herein set out that appellant's intestate, at the time of bringing suit, was the lawful wife of the assured, the appellee company was justified in paying the amount of the benefit certificate, as it did, to Mary Eva (Roth) Bandlion, on the grounds that the constitution of the defendant society gives express power to provide that on the death of a member a sum not exceeding $3000 be paid to "persons dependent upon such member," and the by-laws provide that a benefit may be made payable "to any person who is dependent upon the member for maintenance, (food, clothing, lodging or education.)" Section 1 of our statute relating to fraternal benefit societies provides that death benefits shall be paid only to the families "or to persons dependent on the member." Such finding of the Appellate Court is the principal error assigned by appellant and relied on for reversal.

There is no doubt but that the appellee company could, under proper circumstances, issue a policy of insurance or benefit certificate payable, in the event of death, to *someone* dependent on the assured. But the benefit certificate in this case was not so issued. It was issued, supposedly, to the *wife* of the assured, and for the reason that she stood in the relation of wife to the assured, and not because of the fact,—even if such were the fact,—that by reason of living with the assured as his wife she was a person dependent for food, clothing, etc., upon him. It is also apparent that the policy was paid by the appellee company for the same reason, namely, that the company supposed it was paying to one who had been the wife, and was then the lawful widow, of the assured, and there is nothing in the record to show that any evidence of such dependency was given or required,

either at the time of the issuance of the benefit certificate or at the time of its payment, which under the rules of the society would be necessary in the case of issuing or paying benefit certificates to those who were dependent. This being true, can the appellee company now justify the payment it made by establishing the fact, or assuming, that the person to whom payment was made was, in fact, a dependent, under the meaning of the constitution and by-laws of the said society?

The assured, was a married man, living with his wife and children in Dubuque, Iowa, at the time he first became acquainted with Mary Eva Roth, and she knew that. The evidence shows that after the assured left Dubuque Mary Eva Roth was not seen there. It is certain that he came to Chicago and that she came there about the same time he did, and that shortly after her arrival in Chicago they met, and a few years afterwards a marriage ceremony was performed between them. At that time, as shown by the record, she was twenty-four years old. She admitted that prior to the marriage she saw him frequently. Her testimony was as follows: "He asked me if I would marry him. I asked him, 'What's the matter with them out there?' He said he didn't know anybody had any right on him. Then he asked me to write my father, and they objected, and I wrote him." Her marriage was bigamous and void for the reason that the assured then had a living wife. (*Cartwright* v. *McGown*, 121 Ill. 388; *Schmisseur* v. *Beatrie*, 147 id. 210.) She was never the legal wife of William Bandlion. Her family were still living in Dubuque, Iowa. It appears from the evidence that she was in correspondence with them, and she could easily have ascertained whether the assured was in a position to make her his legal wife. It would be different if he had met her as a stranger, claiming to be single, and she had married him in entire good faith believing him to be a single man, and was without any means of learning otherwise and had no reason to

suspect that he was not free to contract with her a lawful marriage. Under the circumstances she was not one who was, in law, dependent upon him. She could not have compelled him to support her under the laws of this State. (*Alexander* v. *Parker,* 144 Ill. 355; *Palmer* v. *Welch,* 132 id. 141; *Legion of Honor* v. *Perry,* 140 Mass. 580; *Britton* v. *Royal Arcanum,* 40 N. J. Eq. 102; *Royal League* v. *Shields,* 251 Ill. 250.) Besides, there is no evidence in this case to show that she was dependent upon the assured at the time of his death, or that the proof of such dependency at the time of his death was furnished in writing, which was required by the by-laws of the appellee company before she was entitled to take as a dependent.

In the case of *Storey* v. *Masonic Mutual Benefit Ass'n,* 95 N. Y. 474, it was held that Mary Storey, who had married the assured in good faith and lived with him for sixteen years prior to his death believing herself to be his lawful wife, could recover against the defendant company, and that it was unnecessary to examine the evidence and determine whether the assured was the husband of another woman whom he had previously married in England and who was living and undivorced at the time of his death; that while the society had a by-law which prescribed the object and duty of the association on the death of a member and contemplated a payment to the person who should be his lawful widow, this was not such a limitation of the power of the company as to prevent it from requiring as the beneficiary a person who might be designated by the member as holding to him the relation of wife. The rules and by-laws of the defendant company were different from those of appellee here, as appears from the opinion in that case, and it was not a question whether the lawful wife should recover or one who in good faith supposed she was the lawful wife. The action was by the beneficiary named in the policy, against the association, which was attempting to defeat recovery.

In *James* v. *Royal Arcanum,* 130 Fed. Rep. 1014, the court held that the defendant association had the power to insure the life of its member for the benefit of any person who occupied a relation of dependency to such member, and that the question of dependency was not determined solely by the legality of the marriage relation.

It is true that there might be cases where a valid policy of insurance could be issued in favor of some person who was dependent upon the assured, and there might be cases where the question of dependency would be the controlling fact and not the relationship of the assured or the legality of such relationship as stated in the policy, but those cases are distinguishable from the case at bar. We are referred to no case which holds that a woman can live with a man under a void marriage, with a knowledge of the facts such as Mary Eva Roth possessed in this case, and bring herself within the class of those who are dependent for support, legally or morally, upon the man whom she so lived with. The fact, if such be the fact, that he did live with her and support her for many years does not in any way make the so-called dependency binding upon him as against his lawful wife.

We do not think that under the facts of this case Mary Eva Roth was a dependent upon the assured, or that the amount of this benefit was paid to her by the appellee association as such dependent or could have been legally paid to her as such dependent. The by-laws of the association provide that where the person designated as beneficiary in the certificate is not within any eligible class and there are persons living who are eligible, the fund does not lapse, but is held by the insurance order in trust for the eligible who then stands first in the order of eligibles. The appellee, then, was liable, in the event of the death of the assured, to pay the amount of said benefit certificate to Mary Anne Band-lion, his lawful widow. *Royal League* v. *Shields, supra; Knights and Ladies of Honor* v. *Menkhausen,* 209 Ill. 277;

*Baldwin* v. *Begley,* 185 id. 180; *Palmer* v. *Welch, supra; Alexander* v. *Parker, supra.*

For the reasons given, the judgment of the Appellate Court will be reversed and the judgment of the circuit court will be affirmed.

*Judgment reversed.*