## WOODMEN OF THE WORLD LIFE INS. SOC. v. IRICK et al.

### Civil Action No. 1137.

District Court, E. D. South Carolina, Orangeburg Division.

Dec. 22, 1944.

Felder & Rosen, of Orangeburg, S. C., for plaintiff.

L. A. Hutson, of Orangeburg, S. C., for defendant Mattie Page Irick.

Ziegler & Brailsford, of Orangeburg, S. C., for other defendants.

WARING, District Judge.

This action was instituted by the plaintiff, Woodmen of the World Life Insurance Society, against the widow and children and a grandson of James D. Irick, deceased, under the interpleader statute, 28 U.S.C.A. § 41, Subdivision 26. The plaintiff filed its complaint and deposited in the registry of the court the sum of $915.34. The complaint sets out that the plaintiff had heretofore on March 27, 1937, issued to James D. Irick a certificate of insurance number R–167318–B, originally in the amount of $900, and that on June 23, 1942, the assured acting under his rights contained in the policy, changed the beneficiary and designated as beneficiaries his grandson, Franklin L. Summers, to receive the sum of $50, his daughter, Ruth Irick Edwards, to receive the sum of $50, and his wife, Mattie Page Irick, to receive the balance, and by a rider attached to the certificate the Society made an additional agreement to erect a monument to mark his grave at a cost of not less than $100. The assured, James D. Irick, died January 6, 1944.

By reason of adjustments by way of credits and debits in regard to dividends and premiums the actual amount at time of death of assured to be paid to the beneficiaries amounted to $915.34 and that amount was paid into the registry of the court by the plaintiff when its complaint was filed. The balance of $100 for the monument has not yet been expended and is awaiting the disposition of the other issues by this court.

The complaint shows that claims have been instituted by the widow, the named beneficiary, Mattie Page Irick, and that she actually commenced a suit. It is further. er shown that other members of the family, namely, the children, had filed a claim alleging that Mattie Page Irick was not the lawful wife, and therefore, could not be the beneficiary under the terms of the policy and the laws governing fraternal benefit associations. The complaint prayed that the court direct the distribution of the funds which have been paid into the registry and award the plaintiff its costs including a reasonable attorney's fee and that the plaintiff be dismissed from any further liability.

An order enjoining all parties from taking any further steps in the action already brought or from bringing any actions except in this cause was issued as authorized by the statute above referred to, and thereafter the various defendants appeared and answered.

Mattie Page Irick claimed the fund as beneficiary and demanded that the monies in the registry be disbursed by paying the two $50 amounts and the balance of $815.-34 to her. The other parties claim that this balance should be equally divided among the children of the assured, agreeing that the two $50 benefits should be paid. The issue, therefore, is clear cut as to whether the sum of $815.34 shall be paid to Mattie Page Irick, the widow, or to the three children, of James D. Irick.

The parties waived trial by jury and the case was heard by me at the request of counsel, time was allowed for filing of briefs and these are now before me. Counsel failed to engage a reporter to take the testimony and so there is no verbatim report of same, but I am filing herewith a memorandum of my notes summarizing the testimony.

There are really only two questions involved in this cause: First, was Mattie Page Irick the lawful wife of the deceased, James D. Irick, and as such entitled to receive benefits under the policy; and second, even if it be conceded that she was not the lawful wife was she entitled to receive the funds as a "dependent" in accordance with the meaning of "dependent" under the terms of the policy and the laws governing same.

The policy directs the payment of the two items of $50 and then provides "balance to Mattie Irick, wife." Section 55 (b) of the Constitution and By-Laws of the Society provides that:

"If all of the designated beneficiaries be unauthorized by law to receive the benefits, * * * the benefit shall be paid to the surviving wife and surviving children * * * share and share alike; provided that such surviving wife shall not be entitled to any benefits if she shall have been divorced."

In this case there is no question of divorce, but there is a question as to the legality of the marriage.

The statute law of the State of South Carolina governing fraternal benefit associations is as follows:

"Sec. 8038. Persons to whom pay death benefits.—The payment of death benefits shall be confined to wife, husband, relative by blood to the fourth degree, ascending or descending, stepfather, stepmother, stepchildren, children by legal adoption, or to a person or persons dependent upon the member: provided, that if, after the issuance of the original certificate the member shall become dependent upon the charity of an individual or of an institution, he shall have the privilege, with the consent of the association, to make such individual or institution his beneficiary. Within the above restrictions each member shall have the right to designate his beneficiary, and from time to time have the same changed in accordance with the laws, rules or regulations of the association, and no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable upon the death of said member: provided, that any association may, by its laws, limit the scope of beneficiaries within the above classes."

The society is a fraternal benefit association incorporated under the laws of the State of Nebraska. In the presentation of this case counsel made no reference to the statutes of Nebraska, nor were the same called to my attention, but I am informed that the Nebraska statute is practically the same as the South Carolina statute and reads as follows:

"Payment of death benefits shall only be made to the families, heirs, blood relations, affianced husband or affianced wife, of or to persons dependent upon the member."

■ The foregoing quotation is taken from Gregory v. Sovereign Camp of Woodmen of the World, 104 S.C. 471, 473, 89 S.E. 391. I call attention to the Nebraska statute by reason of the fact that the Supreme Court of the United States has held in Modern Woodmen of America v. Mixer, 267 U.S. 544, 45 S.Ct. 389, 69 L. Ed. 783, 41 A.L.R. 1384, that membership in a fraternal benefit society, *"must be governed by the law of the State granting the incorporation. * * * It does not matter that the member joined in another state."* 267 U.S. at page 551, 45 S.Ct. at page 389, 69 L.Ed. 783, 41 A.L.R. 1384, (emphasis added.)

See also Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771.

By reference to the testimony it appears that Mattie Page married Joseph Hightower in 1916 and they had three children. They lived together until 1933, when they separated and she left his home and went to live with her mother, their children remaining with the father. After a lapse of about eight years she married James D. Irick on December 20, 1941. She testified that before marrying Irick she consulted an attorney and the Probate Judge in Orangeburg and that she had not heard from Hightower and believed that he had gone away and, therefore, that she was free to marry again.

Section 8568 of the Code of South Carolina is as follows:

"Sec. 8568. Bigamous marriages void.— All marriages contracted while either of the parties has a former wife or husband living shall be void: provided, that this section shall not extend to a person whose husband or wife shall be absent for the space of seven years, the one not knowing the other to be living during that time; nor to any person who shall be divorced, or whose first marriage shall be declared void by the sentence of a competent court,"

■ Her testimony was that she acted in good faith when she married Irick and that he and his children by a former marriage and the community in general accepted her as a lawful wife. There was no suggestion that a divorce had ever been obtained or the first marriage declared void.

But a further examination of the testimony fails to show any real attempt on the part of Mattie Page Irick to ascertain the whereabouts of her former husband, Hightower. From her own testimony it appears that she lived with Hightower in what is known as the Brier Creek Section of Bamberg County and later moved to or near the Town of Denmark and that when

she separated from him she lived in the adjoining County of Orangeburg residing at or near Branchville. At the time of the trial Hightower was in the court room and his former wife identified him. She did not show that she had made any effort to make inquiry as to what had become of him, but merely said she heard he had gone away. The testimony of a number of witnesses showed that Hightower had continued to live at the old home and managed his mother's farming operations and had never been away for any extended period of time. These witnesses had seen him frequently and one of the witnesses had even seen him a number of times at the residence of Mrs. Page, the mother of Mattie Page Irick, and the home to which the latter went when she separated from Hightower. It appears that Branchville is a little over twenty miles from Denmark and it is inconceivable that a wife who left her husband at the old homestead and moved to a home a little over twenty miles away should in good faith believe that he had disappeared or was dead. There is not a trace of evidence that she made any effort to ascertain his whereabouts and if she had made the slightest effort to start an inquiry at his old home or among his friends or family she would have had no difficulty in locating him because apparently he remained right there all the time. In my opinion the testimony points conclusively to the fact that the marriage of Mattie Page to James D. Irick was not legal and that she never was his lawful wife and that she knew or must have known of this.

■■■ The next question, therefore, to be considered is whether Mattie Page Irick was a dependent as contemplated by the terms of the policy and the laws governing the same. She testified, and there was no contradiction of this, that she had no independent means of her own and that before her marriage to Irick she had been dependent upon her mother for support and that after the marriage Irick supported her entirely and that she was an actual dependent.

But we now come to the real important and difficult matter in the case. What is meant by a dependent under this policy and the laws governing the same and can one who is not a lawful wife of a deceased member, although relying upon him for support, be named as a beneficiary under the guise of dependency.

Counsel have cited a large number of authorities pro and con on this interesting question. Most of the cases are where the claim of the beneficiary is contested on the ground that the assured had a former wife living and the courts have generally held that if the parties in good faith believed that the second marriage was valid and acted in such belief, and particularly where the *beneficiary* was convinced of this fact, that the designation of beneficiary will be sustained and the payment of the proceeds of the policy made to her. In considering the cases cited this qualification must be kept definitely in mind as almost all of them are based upon such a situation. But in the present instance the facts are quite different. As above stated, I am convinced and find as a fact that Mattie Page Irick knew or must have known that her former husband was alive and was living practically in the vicinity. Whether or not Irick knew of this is beside the point. She is the claimant here and I think the test is *her* knowledge rather than his. So that in considering this matter we have to accept the facts already found, namely, first, that her marriage to Irick was illegal, and second, that she knew or must have known that fact. Applying these findings to the test of what is a dependent, I have reached the conclusion that "dependent" in the statute law of both Nebraska and South Carolina means a *legal dependency* and not a mere status where one is dependent for support upon the favor or gratuity of another. Under the facts as found Mattie Page Irick not being a lawful wife was not entitled as a matter of law to support from Irick and was not a legal dependent of his. I think that this reasoning is sound and is supported by ample authority. The law does not favor dependency not based upon legal and moral grounds and the fact that a woman lives with a man and is actually dependent upon him for her bed and board does not give her any legal status or claim for dependency.

A case very similar to this was decided by the Supreme Court of North Carolina in Applebaum v. Order of United Commercial Travelers of America, 171 N.C. 435, 88 S.E. 722. The syllabus in the Southeastern Reporter clearly summarizes the holding as follows:

"Under the deceased's certificate of membership in defendant fraternal benefit association, providing for payment in case of death to plaintiff as his wife, and limit-

ing beneficiaries to relatives by blood, marriage, or legal adoption, and persons dependent upon the member, plaintiff, the bigamous wife of the deceased, not being related or legally dependent, does not come within any of the classes named, and she is not entitled to take as the beneficiary of the contract."

In a later opinion the Supreme Court of North Carolina reaffirmed the above doctrine, specifically referring to the above case, and holds that a dependent as contemplated by a mutual benefit insurance contract must be a *legal* dependent. The court says:

"Upon the death of the decedent, Who was the legal dependent under the terms of the contract and upon the facts found by the trial judge? Legal Dependent means something more than one who is deriving support from another. It imports *one who has the right to invoke the aid of the law to require support*." National Council v. Tate, 212 N.C. 305, 193 S.E. 397, 399, 113 A.L.R. 1514, 1517.

The Supreme Court of Illinois in construing a mutual benefit insurance policy on the question of dependency held that a woman who married with knowledge that the assured had a wife living did not come within the class of legal dependents. The court says:

"We are referred to no case which holds that a woman can live with a man under a void marriage, with a knowledge of the facts such as Mary Eva Roth possessed in this case, and bring herself within the class of those who are dependent for support, legally or morally, upon the man whom she so lived with." Duenser v. Supreme Council of R.A., 262 Ill. 475, 104 N.E. 801, 804, 51 L.R.A.,N.S., 726, 730.

The citation of cases along this line might be multiplied without profit. To call attention to only a few, see Electrical Workers' Benefit Ass'n v. Brown, 58 App. D.C. 203, 26 F.2d 981; Keener v. Grand Lodge, 38 Mo.App. 543.

The matter is well summarized as follows:

"A woman living with a member of a mutual benefit society as his wife, and supposing herself to be such, is generally held to be a dependent on him within the meaning of restrictions relating to the eligibility of beneficiaries. There is, however, some authority to the effect that the woman in such case is not a 'dependent,'

and it is generally held *that one who knowingly lives in an illicit relationship with a member of a mutual benefit* society cannot be regarded as a 'dependent.'" (Emphasis added.) 38 Am.Jur. Mutual Benefit Societies, Sec. 151.

I have reached the conclusion that Mattie Page Irick is not entitled to recover under this policy not being a dependent as contemplated by the policy and the statute governing the same and that the funds in the registry of the court should be disbursed by paying: First, the costs of this cause, including to plaintiff's attorney a reasonable attorney's fee to be hereafter fixed. Second, to Ruth Irick Edwards $50 and to Franklin L. Summers $50. Third, the balance to be divided equally among the three children of James D. Irick, that is to say, one-third each to Alma Irick Page, James Limuel Irick and Ruth Irick Edwards.

 Findings of fact and conclusions of law and an order will be filed in accordance with the foregoing views. The order must provide that the Society be required to furnish evidence that it has erected or made provision for the erection of a monument at a cost of not less than $100 as provided by the policy, and the costs and attorney's fee to be allowed shall not be paid and this action shall not be dismissed until satisfactory evidence of same is filed in this court.