## Pest and Kolesnik Marriage License

*Hamilton, Smith & Darmopray,* for petitioners.

KLEIN, P. J., and LEFEVER, J., May 21, 1955.—
Before us are the petitions of Magdalena Pest and
Josef Kolesnik to adjudicate their respective spouses
presumed decedents, and to direct the issuance of a
marriage license to petitioners.

These petitions are filed pursuant to the Marriage
Law of August 22, 1953, P. L. 1344, 48 PS §1 et seq.
Section 8 thereof provides:

"(a) Finding of Death. When the spouse of an
applicant for marriage license has disappeared, or is

absent from his place of residence without being heard of after diligent inquiry, an orphans' court judge, aided by the report of a master if necessary, upon petition of the applicant for marriage license, may make a finding and decree that the absentee is dead and the date of his death: Provided, That notice to the absentee has been given as provided in subsection (d) of this section: Provided further, That either of the applicants is and for one year or more prior to the application has been a resident of Pennsylvania.

"(b) Presumption from Absence. When the death of the spouse of an applicant for a marriage license is in issue, his unexplained absence from his last known place of residence and the fact that he has been unheard of for seven years may be sufficient ground for finding he died seven years after he was last heard from.

"(c) Exposure to Specific Peril. The fact that an absentee was exposed to a specific peril of death may be a sufficient ground for finding that he died less than seven years after he was last heard from.

"(d) Notice to Absentee. The Court shall require such advertisement in such newspapers as the court, according to the circumstances of the case, shall deem advisable, of the fact of such application for the marriage license, together with notice that at a specified time and place the court or a master appointed by the court for that purpose will hear evidence concerning the alleged absence, including the circumstances and duration thereof."

This is a new provision in the law of Pennsylvania.[1]

---

1. The opinion in the companion case, F. A. Marriage License, no. 1673 of 1955, 4 D. & C. 2d 1, drafted contemporaneously herewith but filed two days earlier, sets forth the history of the former law and summarizes the salient provisions of the new law.

14

Heretofore, there was no procedure available in this State to declare a spouse a presumed decedent for the purpose of making the other spouse eligible for remarriage. In contrast, there was statutory authority for distribution of property of a presumed decedent: Fiduciaries Act of 1949, sec. 1201 et seq. Therefore, where (1) the spouse disappeared and was thereafter not heard from for a period of more than seven years, or (2) the spouse of a displaced person was placed in specific peril or disappeared in the horrors and terrors of Europe, with its concentration camps and gas chambers, etc., during World War II, or immediately thereafter, there was no court procedure available to declare him legally dead, so as to enable the other spouse to remarry. The quoted statute was drafted in an effort to provide relief in such cases. To the best of our knowledge, this is a case of first instance in Pennsylvania.[2]

Application for a marriage license was filed by petitioners on June 30, 1954. Mr. MacDonnell, assistant orphans' court clerk, refused to issue the license because of the uncertainty as to the death of the spouses of both applicants. Thereupon, petitioners retained counsel and filed the pending petitions. Hearings were held by us on November 24, 1954, and April 4, 1955. We shall treat separately the cases of the two petitioners.

---

2. Elsewhere in the United States legislative authority has been granted to the courts to decree a missing spouse a presumed decedent and thereby make a surviving spouse eligible for remarriage. See Arkansas Digest of Statutes, 1947, sec. 55-109; Aetna Life v. Robertson, 195 Ark. 237; Domestic Relations Law of N. Y. Statutes Annotated §7-a; Matter of Kotlik, 153 Misc. 355, 274 N.Y.S. 838; Matter of Entenman, 122 Misc. 441, 204 N. Y. S. 100; 6 Tennessee Code, §36-404 (1955) ; White v. State, 157 Tenn. 446; South Carolina Code, 1952, title §20-6; Woodmen of the World Life Ins. Soc. v. Irick, 58 F. Supp. 202, and North Dakota Revised Code of 1943, title 14-0306.

## Petition of Magdalena Pest

Magdalena Pest resides at 2533 North Fourth Street, Philadelphia, Pa. She has continuously resided in Philadelphia since May 8, 1950, when she immigrated to this country from Austria.

On January 24, 1937, petitioner married Josef Pest, in Zemun, Yugoslavia. She cohabited with her husband from the date of their marriage until October 17, 1942. During these five years the marriage was harmonious. Petitioner and her husband were devoted to each other. He supported her adequately in his trade as a tailor. Two children were born of this marriage. One, Stefan, died April 23, 1946, in a concentration camp in Yugoslavia. The other child, Katherine, is presently living with petitioner in this country

On October 17, 1942, Josef Pest was impressed into the German Army. It appears that he became a member of one of the famous German Panzer divisions. From the date of Josef Pest's entry into the German Army until March 1945 he regularly corresponded with petitioner. He was permitted to make one visit home, "at Christmas 1943". In his letters he made frequent reference to the day when the war would be over and he would be privileged to return to his wife and family.

During the month of March 1945 his regular communications ceased. At that time the Panzer division of which he was a member was in bitter combat on the Russian front; the armies opposing Germany were closing in; the war was near its end. Neither petitioner, nor any member of her family, nor anyone else, has heard from or about Josef Pest since then.

In June 1945 petitioner was placed in a Communist concentration camp where she remained until January 1947, when she escaped. Upon her escape, petitioner made many efforts to locate her husband. She enlisted the aid of the Red Cross. She endeavored unsuccessfully

to contact his military unit commander. She contacted mutual friends and relatives in a vain effort to learn something of her husband. She and her uncle, Anton DeWald, and her mother-in-law, Katherine Pest, advertised in newspapers in Austria and in Germany for information concerning her husband, giving his rank (corporal), his Panzer division number, and his own serial number. In this fashion she requested information from his comrades as to his whereabouts or as to what happened to him. No information was forthcoming.

Since petitioner arrived in the United States, she has corresponded regularly with her mother-in-law. The last letter from her mother-in-law stated that no word had been heard of Josef Pest, and that the mother-in-law approved and blessed petitioner's proposed marriage with Kolesnik.

It appears from the facts in this case that Josef Pest died in combat in or about March 1945. He was a loving and devoted husband and father. He regularly communicated with his wife from the date he was impressed into the German Army until March 1945. He frequently and longingly made reference to the time when he would return to his wife and children. He was subject to the specific peril of battle. In March 1945, near the close of World War II, the fighting was particularly bitter, and the dangers for soldiers in the German Army increased as their forces diminished and were finally conquered. He was in no difficulty with the law. He was mentally well. He had no apparent reason not to return home.

Petitioner has made every reasonable effort to communicate with him, and all of her efforts have failed. It is common knowledge that during the terminal stages of World War II, many persons died and were buried in unmarked graves; that many other persons are missing and cannot be located; that it is impossible

to produce death certificates or other formal proof of death, or eye witnesses to the death of these persons. This is particularly true of those serving in military forces.

Therefore, we conclude that this case falls squarely within section 8(c) of the Marriage Law of 1953. Consequently, we find as a fact that Josef Pest died in or about March 1945. It follows that Magdalena Pest is free of the bonds of matrimony and eligible for the issuance of a marriage license.

## Petition of Josef Kolesnik

Josef Kolesnik resides at 519 Poplar Street, Philadelphia, Pa. On August 3, 1951, he immigrated to the United States, and has continuously resided in Philadelphia since that date.

On November 23, 1937, petitioner married one Helena Kolesnik in Krasna-Hrad, Ukraine. Petitioner cohabited with her from the date of their marriage until September 17, 1943. Petitioner and his wife were devoted to each other. Their marriage was a happy one. He worked in a leather factory and supported his wife with the wages he earned. No children were born of this marriage.

Krasna-Hrad, Ukraine, was in a sector between the hostile armies of Germany and Russia. The Russian armies were just east of Krasna-Hrad on September 16 and 17, 1943. On September 17th, Krasna-Hrad was surrounded on three sides by the Russian Army. It fell to the Russians on September 20th. Life in that city then became particularly dangerous. On September 17, 1943, petitioner was separated from his wife by the German Army which forcibly removed all men for labor. He was sent to Kirowohrad-Ukraine. He later escaped from the German Army, traveled in the Ukraine, Roumania, Hungary and Germany. For a time he was "in the D. P. Camp". Eventually, he was

permitted to immigrate to the United States as a Ukrainian displaced person.

Before petitioner left Europe he made various unsuccessful efforts to contact his wife and to learn. her whereabouts. He had to be circumspect in his direct letters to his wife and friends at Krasna-Hrad because of fear that: (1) If his whereabouts were disclosed, he might be forcibly returned to Communist authorities, and (2) it would endanger the life of his wife (if she were still alive), and the lives of her relatives. He contacted an international bureau which maintains a record of the names of displaced persons. He inquired of other displaced persons about his wife. All of his efforts to locate his wife were fruitless.

He has made additional efforts to locate his wife since his arrival in the United States. The American Red Cross, the United Ukrainian Relief Committee, and other agencies which are devoted to the cause of locating displaced persons, have tried to locate Helena Kolesnik. All efforts have failed.

There was introduced into evidence newspaper reports which depicted the battles and the bitter fighting which occurred in and around Krasna-Hrad on September 17, 1943, and for several weeks thereafter.

Petitioner testified that at least 50 percent of the houses in his neighborhood were bombed or shelled immediately prior to his separation from his wife. One person was killed in the block in which he and his wife lived during this shelling.

There was introduced into evidence a copy of an order by Himmler, wired to the commander of the departing German army in this sector:

"The following must be done, upon evacuating parts of this territory in the Ukraine, no human being, no head of cattle, not a centner of grain, not a single

railway track is to remain. . . . The enemy must find a totally burned and destroyed country."

This is one of the most inhuman documents in history. It is vicious, brutal, cruel, and devoid of all normal sensibilities. It is the end product of total war waged by a pitiless, relentless, and diabolical despot in an effort to stem the tide of battle which was inexorably crushing his forces. The German army followed this order ruthlessly. Many civilians were killed or forced into exile as a result. Both Germans and Russians segregated and scattered families. There was almost 60 percent mortality among civilians in this area.

Petitioner and the experts who testified on his behalf are of the opinion that Helena Kolesnik died shortly after petitioner's involuntary separation from her on September 17, 1943, as a result of the battles raging about Krasna-Hrad.

This case is not as clear as the first. Difficulty of proof is in a large measure caused by the notorious and nefarious Iron Curtain which Soviet Russia has drawn between it and the free countries of the world. It is impossible to obtain information as to what actually happened in Krasna-Hrad, subsequent to September 17, 1943, and what happened, in particular, to Helena Kolesnik.

The United States Government, motivated by strong humanitarian desires, has offered a sanctuary in this land of abundance to displaced persons who have suffered so intensely at the hands of the Germans and Russians. The United States has striven to assist these persons to forget the horrors of war, concentration camps, torture and death. It has endeavored to provide them with an opportunity to find a new life, to earn a livelihood, to be decent and respectable, and as nearly as possible to have an opportunity to live as normal human beings. A cardinal and primitive desire of any

normal man and woman is companionship with the other sex, the privilege of marriage, and the opportunity to raise a family.

In an effort to assist in the accomplishment of these purposes and aims, section 8 of the Marriage Law was drafted. The legislature of Pennsylvania, in adopting this statute, has established the public policy of Pennsylvania. We believe that those people who come to America to make a new life should be treated in a realistic and practical manner. In close cases the benefit of the doubt should be resolved in their favor. Under all the evidence in this case it is probable that Helena Kolesnik was killed during the fighting on September 17, 1943, or shortly thereafter.

Our conclusion with regard to this is fortified by the various efforts which petitioner has made to communicate with his wife, to learn of her whereabouts, and his continued efforts to ascertain what happened to her. Inasmuch as 12 years have elapsed without any word whatsoever from or about her, we find that she is a presumed decedent. For the purposes of this case it is unimportant whether we find that she died on September 17, 1943, as a result of specific peril (under section 8(c), or seven years later, viz., on September 17, 1950 (under section 8(b)).

Acordingly, we find as a fact that Helena Kolesnik is dead and that petitioner is free of the bonds of matrimony and that a marriage license may be properly issued to him.

### Jurisdiction

Petitioner, Magdelena Pest, has resided in Pennsylvania since May 8, 1950. Petitioner, Josef Kolesnik, has resided in Pennsylvania since August 3, 1951. The requirement of section 8(a) of the act for this court to have jurisdiction is "that either of the applicants is and for one year or more prior to the application has been a resident of Pennsylvania". Both of the appli-

cants meet this requirement. A fortiori, this court has jurisdiction in this case.

### Advertisement

In view of the extended efforts made by both applicants, through advertisement and otherwise, to locate their respective spouses, we are of the opinion that further advertising would be fruitless. Accordingly, we rule that the requirements of section 8(d) have been met.

After a careful examination of the record in these cases, we find as a fact and a conclusion of law that the respective spouses of the applicants are dead, and that applicants are eligible to receive a marriage license. Accordingly, we enter the following

### Decree

And now, to wit, May 21, 1955, the clerk of the courts is directed forthwith to issue a marriage license to applicants.